**Opinion filed April 7, 2011**



In The

# Eleventh Court of Appeals

_____

## No. 11-09-00306-CR
_____

## JIMMY GONZALES, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 8492-D**

## O P I N I O N

Jimmy Gonzales pleaded guilty to the third degree felony offense of driving while intoxicated. In accordance with the plea bargain agreement, the trial court assessed punishment at confinement for five years and a $1,000 fine, suspended the confinement portion of the sentence, placed appellant on community supervision for five years, and required him to spend thirty days in the county jail as a condition of community supervision. We affirm.

In his sole issue on appeal, appellant challenges the trial court's denial of his pretrial motion to suppress. Appellant argues that he was detained illegally because, prior to his

detention, the officer had changed his mind about the need to investigate appellant's well-being and was no longer pursuing a community caretaking function.

In reviewing a trial court's ruling on a motion to suppress, appellate courts must give great deference to the trial court's findings of historical facts as long as the record supports the findings. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). Because the trial court is the exclusive factfinder, the appellate court reviews evidence adduced at the suppression hearing in the light most favorable to the trial court's ruling. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 87. Where such rulings do not turn on an evaluation of credibility and demeanor, we review the trial court's actions de novo. *Id.*

The trial court conducted a hearing on appellant's motion to suppress and made findings of fact that are supported by the record. The trial court found that Officer Adam Becker observed a vehicle pull over to the side of a lightly traveled highway sometime before 1:00 a.m. Because he was concerned that the operator of the vehicle might need assistance, Officer Becker pulled up behind the vehicle. He turned on his back red and blue flashing lights, his front-facing red and blue flashing lights, and his front bright white light (take-down light). The driver of the vehicle began to pull away but "then returned to or stayed on the area off the highway." According to Officer Becker, he would not have tried to stop the vehicle if the driver had driven away. Upon approaching the vehicle to talk to the driver and to see if everything was okay, Officer Becker observed that the driver (appellant) had red, bloodshot eyes. Officer Becker smelled a strong odor of alcohol coming from the vehicle. The trial court determined that the officer's "primary motivation for pulling up to the vehicle was a community-caretaking purpose" and that the officer's belief that the operator of the vehicle was in need of help "was reasonable."

First, the State asserts in its brief that appellant was not seized for purposes of the Fourth Amendment. Officer Becker pulled in behind appellant and activated both the emergency flashing lights and the take-down light. Officer Becker admitted that motorists have an "obligation to stop for those lights" and may be guilty of evading detention if they fail to stop and that he has never encountered a driver in that situation driving away without first talking to him. We cannot agree with the State's assertion that this was not a seizure because appellant was already stopped and because the officer would have allowed appellant to continue to drive away.

2

In *State v. Garcia-Cantu*, 253 S.W.3d 236, 245 n.43 (Tex. Crim. App. 2008), the court stated, "The use of 'blue flashers' or police emergency lights are frequently held sufficient to constitute a detention or seizure of a citizen, either in a parked or moving car." The court also noted that whether an encounter has become a seizure depends upon the officer's "objective behavior," not his subjective intent. *Garcia-Cantu*, 253 S.W.3d at 244 n.41. Based upon the totality of the circumstances in this case, Officer Becker's encounter with appellant constituted a seizure. The next question is whether the officer's seizure of appellant – without a warrant, reasonable suspicion, or probable cause – was reasonable.

In certain circumstances when there is no reasonable suspicion or probable cause that an offense has been committed, a police officer may reasonably seize an individual through the exercise of the community caretaking function. *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002); *Wright v. State*, 7 S.W.3d 148, 151-52 (Tex. Crim. App. 1999); *see Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). As part of an officer's duty to "serve and protect," an officer "may stop and assist an individual whom a reasonable person, given the totality of the circumstances, would believe *is in need of help*." *Corbin*, 85 S.W.3d at 276 (citing *Wright*, 7 S.W.3d at 151). This exception to the warrant requirement is narrow, and a police officer may not properly invoke the community caretaking function if he is primarily motivated by a non-community caretaking purpose. *Id.* at 277.

The trial court determined that Officer Becker was motivated primarily by his community caretaking duties, and the record supports that conclusion. The record reflects that Officer Becker was concerned that appellant might need assistance, and he pulled in behind appellant to check on him. Officer Becker stated that he activated his lights to alert other drivers on the road and to let the driver of the vehicle know that he was not "some bad guy." Even though Officer Becker was on STEP patrol (selective traffic enforcement program) looking for DWI violators, the trial court, as the exclusive judge of witness credibility, could have concluded that Officer Becker was primarily motivated by community caretaking concerns when he pulled in behind appellant. *See Corbin*, 85 S.W.3d at 277. When Officer Becker first approached appellant's vehicle on foot, he asked appellant if everything was okay. Nothing in the record suggests that Officer Becker's motive was something other than to check on the welfare of the driver.

Once it is determined that an officer was primarily motivated by his community caretaking function, it must then be determined whether the officer's belief that the person needed help was reasonable. *Id.* In evaluating whether an officer reasonably believed that the person needed help, courts may look to a list of four nonexclusive factors: (1) the nature and level of the distress exhibited by the individual; (2) the location of the individual; (3) whether or not the individual was alone or had access to assistance other than that offered by the officer; and (4) to what extent the individual, if not assisted, presented a danger to himself or others. *Id.*; *Wright*, 7 S.W.3d at 152. The court in *Corbin* stated that the first factor is entitled to the greatest weight because the purpose of the community caretaking exception is to allow an officer to seize and assist an individual reasonably believed to be in need of help. 85 S.W.3d at 277.

In this case, appellant had pulled over to the side of the road and stopped a little before 1:00 in the morning. The location where appellant was stopped was inside the city limits, but traffic was minimal in that area at that time of night. There were no houses nearby and only a few businesses in the area. If appellant had needed assistance, he would have had difficulty finding anyone other than Officer Becker to help him at that time in that location. The trial court determined that Officer Becker's belief that appellant needed help was objectively reasonable; that determination is supported by the record. Thus, appellant's detention was justified under the community caretaking exception, and the trial court did not err when it denied appellant's motion to suppress. Appellant's issue is overruled.

The judgment of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE


April 7, 2011

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.