# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-11-00078-CR

---

**Sandy Myers, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY,
NO. C-1-CR-10-200068, HONORABLE ELISABETH ASHLEA EARLE, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Sandy Myers was arrested for driving while intoxicated. After her arrest, Myers filed a motion to suppress the results of her breath test, but the trial court denied the motion after conducting a suppression hearing. Subsequent to the trial court's ruling, Myers pleaded nolo contendere to the charges, and the trial court order her to spend 10 days in jail and suspended her license for 90 days. Myers appeals the denial of her motion to suppress. We will affirm the trial court's judgment of conviction.

## BACKGROUND

Late one night in January 2011, Officer Shane Housmans pulled Myers over for a traffic stop and eventually arrested her for driving while intoxicated. Officer Housmans asked Myers to submit to a breath test and informed her of the consequences for refusing to provide a breath sample. *See* Tex. Transp. Code Ann. § 724.015 (West Supp. 2012) (requiring officer to inform

individuals "orally and in writing" about the consequences of failing to submit sample). After hearing the warning, Myers refused to provide a breath sample. Subsequent to Myers's refusal, Officer Housmans transferred Myers to a mobile alcohol-testing unit.

When they arrived at the unit, Officer Housmans told Myers that the Austin Police Department was conducting a no-refusal initiative that night and that he was going to apply for a warrant to obtain a blood sample. After being informed about Officer Housmans's intent to apply for a search warrant, Myers changed her mind regarding the breath test and agreed to provide a breath sample. The results showed that Myers's blood alcohol level was over the legal limit.

After her arrest, Myers filed a motion to suppress, and the trial court scheduled a hearing. During the hearing, Myers asserted that the traffic stop by Officer Housmans was unlawful and that she did not voluntarily consent to providing the breath sample, but the trial court concluded otherwise. Specifically, the trial court found that Officer Housmans was credible and that prior to Myers being stopped, Officer Housmans saw Myers driving away from the downtown area at approximately 1:15 a.m.; noticed that as Myers drove by, her vehicle got very close to his and crossed over the white line divider; and noted that after he turned on his lights to indicate to Myers that she needed to pull over, Myers straddled the "double yellow" lane divider when she turned left. For these and other reasons, the trial court concluded that "Officer Housmans had reasonable suspicion to believe that Ms. Myers had violated" the transportation code by failing to maintain a single line of traffic. The trial court also found that Myers initially refused to provide a breath sample, that Officer Housmans drove Myers to a mobile alcohol-testing facility, that Officer Housmans told Myers that he was initiating the process for obtaining a warrant "to obtain a sample

2

of her blood," that Officer Housmans explained that the process could take a while, that Myers changed her mind and agreed to provide a breath sample after learning that she would have to provide a blood sample and that obtaining a warrant would take a while, and that Myers "chose to take a breath test because it was more expedient and less invasive than a blood test." In light of those findings, the trial court determined that Myers "voluntarily consented to a breath test."

After the trial court made its ruling, Myers pleaded nolo contendere to the charge of driving while intoxicated, and the trial court imposed a sentence of 10 days in jail and suspended her license for 90 days.

Myers appeals the trial court's judgment.

## DISCUSSION

On appeal, Myers raises two issues. First, she argues that Officer Housmans did not have reasonable suspicion to make a traffic stop. Second, she contends that she did not voluntarily consent to providing a breath sample. We will address these issues in the order raised.

*Reasonable Suspicion*

As mentioned above, Myers argues that Officer Housmans did not have reasonable suspicion to initiate the traffic stop. In making this argument, Myers asserts that the evidence presented during the suppression hearing "did not show that she left her single lane of traffic" and therefore did not show that Myers violated the transportation code. *See* Tex. Transp. Code Ann. § 545.060(a) (West 2011) (explaining that drivers on roads with two or more marked lanes for traffic must "drive as nearly as practical entirely within a single lane" and "may not move from the lane unless that

3

movement can be made safely"). As support for this argument, Myers points to the portions of Officer Housmans's testimony during the suppression hearing in which he discussed seeing Myers's car come close to his police car. Specifically, when asked whether he saw Myers's car cross the white line, he responded, "I can't say for sure." In addition, when Officer Housmans was asked, "[Myers] did not get outside of her lane that you can testify under oath," he answered, "Correct." In light of these statements, Myers insists that the evidence does not demonstrate that Officer Housmans had reasonable suspicion at the time that he initiated a traffic stop and that, therefore, the trial court should have granted her motion to suppress.

"In a motion to suppress hearing, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Accordingly, the trial court may "believe or disbelieve all or any part of a witness's testimony, even if that testimony is not controverted." *Id.* When reviewing a trial court's ruling on a motion to suppress, we "should afford almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In addition, we review "*de novo* the court's application of the law of search and seizure" to the facts. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). In reviewing the trial court's ruling, we "must view all of the evidence in the light most favorable to the trial court's ruling." *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). When the trial court accepts the State's version of events and finds the officers to be credible, "the only question" to be answered "is whether the trial court properly applied the law to the facts that it found." *State v. Alderete*, 314 S.W.3d 469, 472 (Tex. App.—El Paso 2010, pet. ref'd).

4

Under the law of search and seizure, the reasonable-suspicion standard applies to "brief detentions which fall short of being fullscale searches and seizures." *Woods v. State*, 956 S.W.2d 33, 35 (Tex. Crim. App. 1997); *see also Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (applying reasonable-suspicion standard to traffic stop).[1] Under this standard, "a police officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Woods*, 956 S.W.2d at 35 (quoting *Terry v. Ohio*, 392 U.S. 1, 88 (1968)); *see also Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000) (explaining that for reasonable suspicion to be present, officer must be able to state more than hunch or unparticularized suspicion of criminal activity). Regarding vehicular detentions, an officer may initiate a traffic stop if he reasonably suspects that the driver has committed a crime. *See Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005); *Aguilar v. State*, No. 03-11-00133-CR, 2012 Tex. App. LEXIS 1677, at *6 (Tex. App.—Austin Mar. 2, 2012, no pet.) (mem. op., not designated for publication). "[T]he reasonableness of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity." *Woods*, 956 S.W.2d at 38. Furthermore, although it is true that an investigative stop is a seizure, *Francis v. State*, 922 S.W.2d 176, 178 (Tex. Crim. App. 1996), an individual is not "seized until he has yielded to a law enforcement

---

[1] Both the State and Myers agree that reasonable suspicion is the governing standard in this case.

officer's show of authority or when officers physically limit his movement," *Johnson v. State*, 912 S.W.2d 227, 234 (Tex. Crim. App. 1995).

As pointed out by Myers, Officer Housmans testified that he did not know for sure whether Myers's car crossed the white lane divider; however, Officer Housmans also testified that he saw Myers's vehicle swerve to the right and get very close to his vehicle and that "[j]udging by the distance she came within my vehicle, I would say yes, she definitely crossed the dotted white line." *See* Tex. Transp. Code Ann. § 545.060(a). In fact, Officer Housmans stated that Myers's vehicle "almost collided with my vehicle" and clarified that there was nothing in the road that might have caused her to swerve. Finally, Officer Housmans testified that after he turned on his emergency lights, Myers straddled the double yellow lane marker prior to turning left.

In her briefs, Myers insists that when performing a reasonable-suspicion analysis in this case, we may not consider the fact that Officer Housmans testified that he saw Myers cross the double yellow lane marker.[2] As support for this proposition, Myers refers to a footnote in a case addressing whether an individual was detained by a police officer when, among other things, the officer shined his spotlight into the interior of a parked car. *See Garcia-Cantu*, 253 S.W.3d at 249 n.43. In that case, the court of criminal appeals stated that the "use of 'blue flashers' or police emergency lights are frequently held sufficient to constitute a detention or seizure of a citizen, either

---

[2] Similar arguments were made to the trial court. In fact, in its original findings of fact and conclusions of law, the trial court determined that Officer Housmans had reasonable suspicion after witnessing Myers drift into his lane and observing Myers's car straddle over the yellow lane marker after he turned on his emergency lights; however, in its amended findings and conclusions, the trial court determined that the second violation could not be considered in its reasonable-suspicion determination because the violation occurred after Officer Housmans turned on his emergency lights. For the reasons detailed in the body of this opinion, we disagree with that determination.

6

in a parked or moving car." *Id.*[3] The court of criminal appeals did not say that an individual is detained the moment that a police officer turns on his emergency lights. To the contrary, the court of criminal appeals has clarified that an individual is not detained "until he has yielded to a law enforcement officer's show of authority or when officers physically limit his movement." *Johnson*, 912 S.W.2d at 234; *see Francis*, 922 S.W.2d at 178 (explaining that investigative stop is seizure). Moreover, given that the case did not involve the use of emergency lights, the statement by the court of criminal appeals would seem to be dicta. *Aguirre-Mata v. State*, 125 S.W.3d 473, 476 (Tex. Crim. App. 2003) (explaining that dicta has no binding effect).

Although Myers's car was observed straddling the yellow lane marker after Officer Housmans turned on his emergency lights, "events occurring after the show of authority by the officers, i.e., when the emergency lights were activated, until appellant finally pulled over, are relevant to a determination of reasonable suspicion." *Gilbert v. State*, 874 S.W.2d 290, 295 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Myers "was not seized or detained until [s]he

---

[3] After making that statement, the court cited to ten non-Texas cases. *State v. Garcia-Cantu*, 253 S.W.3d 236, 249 n.43 (Tex. Crim. App. 2008) (citing *Hammons v. State*, 940 S.W.2d 424, 427-28 (Ark. 1997); *People v. Bailey*, 176 Cal. App. 3d 402, 405-06 (Cal. Ct. App. 1985); *State v. Donahue*, 742 A.2d 775, 779-80 (Conn. 1999); *Hrezo v. State*, 780 So. 2d 194, 195 (Fla. Dist. Ct. App. 2001); *Lawson v. State*, 707 A.2d 947, 949-50 (Md. 1998); *State v. Walp*, 672 P.2d 374, 375 (Ore. Ct. App. 1983); *State v. Gonzalez*, 52 S.W.3d 90, 97 (Tenn. Crim. App. 2000); *State v. Burgess*, 657 A.2d 202, 203 (Vt. 1995); *Wallace v. Commonwealth*, 528 S.E.2d 739, 741-42 (Va. Ct. App. 2000); *State v. Stroud*, 634 P.2d 316, 318-19 (Wash. Ct. App. 1981)). The cases cited are distinguishable from the facts in this case because they all involve a situation in which a police officer turns on his emergency lights near a parked car. *See Gonzales v. State*, 342 S.W.3d 151, 153 (Tex. App.—Eastland 2011) (concluding that pulling up behind parked car and turning on emergency lights constituted seizure), *aff'd*, No. PD-0683-11, 2012 Tex. Crim. App. LEXIS 857 (Tex. Crim. App. June 27, 2012). To the extent that those cases might support a determination that a detention occurs prior to an individual yielding to a show of authority or to officers physically limiting his movements, we do not endorse that proposition.

complied with the officers' signal to pull over," *id.*, and that did not occur until after Officer Housmans observed Myers straddle the yellow marker. *See Hudson v. State*, 247 S.W.3d 780, 785 (Tex. App.—Amarillo 2008, no pet.) (explaining that "[a]ctivation of overhead lights on a police vehicle does not necessarily make an encounter non-consensual[,]" but "when a person stops in response to a patrol car's emergency lights rather than of his own accord, an investigatory detention has occurred and reasonable suspicion is required"); *see also Ritchie v. State*, No. 02-10-00512-CR, 2012 Tex. App. LEXIS 2733, at *8 (Tex. App.—Fort Worth Apr. 5, 2012, no pet.) (mem. op., not designated for publication) (holding that appellant was detained when he pulled over to side of the road and yielded to officer's show of authority in form of flashing emergency lights).

Given Officer Housmans's testimony regarding the manner in which Myers was described to have been driving, we cannot conclude that the trial court erred by concluding that Officer Housmans had reasonable suspicion to detain Myers. When the totality of the circumstances are considered, we believe that Officer Housmans had specific articulable facts, "which taken together with rational inferences from those facts, lead him to conclude that" Myers had violated the transportation code by failing to maintain a single lane of traffic. *See* Tex. Transp. Code Ann. § 545.060; *Woods*, 956 S.W.2d at 38. Accordingly, we overrule Myers's first issue on appeal.

*Breath Sample*

In her second issue on appeal, Myers insists that she did not voluntarily consent to providing a breath sample. In making this argument, Myers refers to a provision of the transportation code in effect during the relevant time and notes that under that provision, an officer seeking to obtain consent for a breath sample was required to warn suspects of the consequences of refusing

8

to submit a sample as well as potential consequences if the individual provides a sample with a blood alcohol level that exceeds the level allowed by law. *See* Act of May 16, 2001, 77th Leg., R.S., ch. 444, § 8, sec. 724.015, 2001 Tex. Gen. Laws 877, 879 ("former § 724.015"), *amended by* Act of May 23, 2011, 82d Leg., R.S., ch. 674, § 1, sec. 724.015, 2011 Tex. Gen. Laws 1627, 1627 (current version at Tex. Transp. Code Ann. § 724.015). Regarding refusals, the individual must be informed that his failure to submit may be used against him in subsequent court proceedings and that his license will be suspended. *Id.* Although Myers does not assert that Officer Housmans failed to provide her with the requisite warnings when he first asked her to provide a breath sample and when she refused to provide the sample, she urges that Officer Housmans later informed her that he was going to obtain a search warrant for her blood and that this additional information improperly coerced her into providing a breath sample.

As support for this proposition, Myers primarily relies on a court of criminal appeals case in which the court held that police officers improperly told a suspect about consequences for failing to submit to a breath test that were not listed in the statutory warning now contained in the transportation code. *See Erdman v. State*, 861 S.W.2d 890, 894 (Tex. Crim. App. 1993). In particular, the officers told the suspect that if he failed to provide a sample, he would be charged with driving while intoxicated and put in jail. *Id.* Further, the court concluded that the test results were inadmissible because the suspect's consent was not voluntary. *Id.*; *see also id.* (stating that if police were permitted to give warnings not contemplated by transportation code, then suspects could easily be coerced into submission). Based on the holding and analysis in *Erdman*, Myers argues that her consent was ineffective because Officer Housmans's statement about applying for a search warrant

9

for her blood was not a statutory warning authorized under the transportation code and because her consent was "a result of psychological coercion." In light of the preceding, Myers insists that the trial court erred by failing to grant her motion to suppress because she did not submit a breath sample voluntarily.

Although there may indeed be circumstances in which an officer's statement regarding obtaining a blood sample might render an individual's consent to a breath test involuntary, we do not believe that the circumstances in this case support that type of conclusion. Under the "implied consent" statute, a person arrested for suspicion of driving while intoxicated is "deemed to have consented" to having samples of his blood or breath taken. *See* Tex. Transp. Code Ann. § 724.011 (West 2011). Accordingly, there is a statutory presumption of consent, *State v. Amaya*, 221 S.W.3d 797, 800 (Tex. App.—Fort Worth 2007, pet. ref'd), but a suspect may refuse "to submit to the taking of a specimen," Tex. Transp. Code Ann. § 724.013 (West 2011). To be effective, consent to a breath test must be voluntary. *See Erdman*, 861 S.W.2d at 893. Indeed, to be voluntary, submission to a breath test "must not be the result of physical pressure or psychological pressure brought to bear by law enforcement officials." *Gette v. State*, 209 S.W.3d 139, 145 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Accordingly, a "suspect's decision to submit to a breath test must be his own, made freely, and with a correct understanding of the statutory consequences of refusal." *Id.*; *see also id.* (explaining that statements about consequences for passing or failing breath test are less coercive than statements about refusing to take test). During a suppression hearing, the defendant bears the burden of showing "that evidence exists rebutting the statutory presumption that he voluntarily consented to submit a breath specimen." *Amaya*, 221 S.W.3d at

10

800-01; *see also Kelly v. State*, 204 S.W.3d 808, 819 n.22 (Tex. Crim. App. 2006) (providing that defendant "had the initial burden to produce evidence to support a finding that she did not consent to . . . blood draw").

In his testimony, Officer Housmans stated that after Myers stopped her car, he walked up to her car, noticed that she had a glazed look on her face, and smelled alcohol. Further, he stated that when he asked for Myers's proof of insurance, she handed him an expired card and then handed him the same card after he told her that the card had expired. In addition, Officer Housmans related that he asked Myers if she had been drinking that night and that she informed him that she had consumed four vodka and sodas. Officer Housmans also testified that he performed the horizontal gaze nystagmus test on Myers, that she exhibited signs of intoxication, and that she was swaying, but he also related that Myers refused to perform any more field sobriety tests. Next, he explained that he placed Myers under arrest, read the relevant statutory warnings regarding breath tests, and asked if Myers would submit to a breath test but that Myers refused to provide a breath sample.

During his testimony, Officer Housmans related that after Myers refused to submit to a breath test, he decided to drive her to a mobile alcohol-testing center to obtain a search warrant for her blood because the Austin Police Department was conducting a no-refusal initiative that night. In his testimony, Officer Housmans explained that he wanted to keep her informed about what was happening so when they arrived at the testing center, he told Myers that the police were conducting a no-refusal initiative and that he was going to apply for a warrant to obtain a blood sample. In addition, he testified that after he told her that he was going to apply for a warrant, Myers then agreed to provide a breath sample. When describing the interaction, Officer Housmans explained

11

that after he told Myers that he would be obtaining a warrant, Myers immediately changed her mind and agreed to provide a breath sample.

When testifying about the night in question, Myers stated that she ultimately agreed to provide a breath sample because she believed that the police were going to obtain a sample of her blood if she did not provide a breath sample due to the fact that a no-refusal initiative was in effect. Specifically, although she acknowledged that she was "not positive" about the exact words that were exchanged, she related that she said to Officer Housmans, "So either way you're going to have blood or I'm going to blow?" Myers also explained that Officer Housmans answered, "Yes," and that she then told him, "Well, I guess I don't have much of a choice." She also stated that she chose to provide a breath sample in order to expedite the process and because she did not want someone sticking a needle in her arm. Further, Myers explained that during her detention, Officer Housmans was polite and did not threaten or intimidate her. Finally, Myers testified that she felt that she was free to change her mind about providing a breath sample after agreeing to provide a sample.

In its findings, the trial court determined that Myers initially refused to provide a breath sample but that Myers changed her mind after Officer Housmans informed her "that he would get a warrant for her blood." Further, the trial court found that Officer Housmans "explained that the process of obtaining a warrant would take considerabl[y] longer and that was why she was waiting in the back of his patrol car," that Myers testified that she was told that either "a sample of breath or blood would be taken," and that Myers "consented to provide a breath sample after learning that her blood would be drawn and that it would take longer than doing a breath test." In its conclusions, the trial court determined that Myers consented to the breath test "when it was

12

explained to her that a blood search warrant procedure was in progress and this would take considerably more time and be more invasive."

During the suppression hearing, Myers did not challenge the propriety of her arrest after she initially refused to provide a breath sample and did not assert that Officer Housmans provided an improper warning at that time. Moreover, although Officer Housmans elected to apply for a search warrant after Myers refused to provide a sample, police officers have "the ability to apply for a search warrant and, if the magistrate finds probable cause to issue that warrant, the ability to effectuate it." *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002) (explaining that drawing suspect's blood under search warrant does not offend Constitution).[4] In fact, although the transportation code authorizes officers to take samples without search warrants in certain circumstances, *see, e.g.*, Tex. Transp. Code Ann. § 724.011 (stating that under "implied consent" statute, person arrested for suspicion of driving while intoxicated is "deemed to have consented" to having samples of his blood or breath taken), there is a strong preference for performing searches authorized by warrants, *United States v. Ventresca*, 380 U.S. 102, 106 (1965). Moreover, when

---

[4] The propriety of Officer Housmans's decision to apply for a search warrant to obtain a sample of Myers's blood is supported by the language of the current transportation code provision setting out the statutory warnings that officers are required to give to suspects when asking for samples of their breath. *See* Tex. Transp. Code Ann. § 724.015 (West Supp. 2011). Under the current statute, officers must inform a suspect that if he refuses "to submit to the taking of a specimen, the officer may apply for a warrant authorizing the specimen to be taken from the person." *Id.* § 724.015(3). Although Myers correctly points out that the bill analysis accompanying this amendment to section 724.015 stated that there "was concern that informing a person that a refusal to submit to the taking of a specimen may result in the officer applying for a warrant authorizing the taking of that specimen constitutes coercion on the part of the informing officer," House Homeland Sec. & Pub. Safety Comm., Bill Analysis, Tex. S.B. 1787, 82d Leg., R.S. (2011), the amendment demonstrates the legislature's intention that police have the option of applying for search warrants in the event that an individual refuses to submit a breath sample.

13

describing his conversation with Myers, Officer Housmans testified that he told her about his applying for a search warrant in order to explain why she had to wait in the back seat of the police car. Furthermore, according to Myers's own testimony, after Officer Housmans informed her about the search warrant, she initiated the conversation about providing a breath sample. Although Officer Housmans communicated his intention to obtain a sample for testing in response to her question, we do not believe that statement invalidated Myers's subsequent consent under the circumstances of this case, particularly where Myers testified that Officer Housmans did not threaten or attempt to intimidate her and that she believed that she could have withdrawn her consent after giving it.

In light of the preceding, including Myers's burden to demonstrate that her consent was not voluntary, we cannot conclude that the trial court erred by concluding that Myers voluntarily consented to providing a breath sample. Accordingly, we overrule Myers's second issue on appeal.

**CONCLUSION**

Having overruled Myers's two issues on appeal, we affirm the judgment of the trial court.

_____

David Puryear, Justice

Before Justices Puryear, Rose, and Goodwin

Affirmed

Filed: August 28, 2012

Do Not Publish

14