COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-108-CR

THE STATE OF TEXAS APPELLANT

V.

LEONARDO SANCHEZ AMAYA APPELLEE

------------

FROM COUNTY CRIMINAL COURT NO. 6 OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

Leonardo Sanchez Amaya was arrested for driving while intoxicated (DWI) and subsequently consented to submit a breath specimen.  Amaya subsequently filed a motion to suppress the results of his breath test, claiming that he was not properly warned of the consequences of providing a breath specimen.  Although a police officer gave Amaya a printed Spanish version of the DIC-24 warnings to read, Amaya complains that he was not properly warned of the consequences because the officer read the DIC-24 warnings in English rather than Amaya’s spoken language—Spanish.  The trial court granted Amaya’s motion to suppress, concluding that “because the statutory warning was not read in the Spanish language and we do not know whether or not the Defendant could read the Spanish warning sheet, we have no way of knowing if the Defendant understood, or at least substantially understood what the officer was telling him.”  The State appeals from the trial court’s order granting Amaya’s motion to suppress.  
See
 
Tex. Code Crim. Proc. Ann.
 art. 44.01(a)(5) (Vernon 2006).

The primary issue we address is whether, in light of the statutory provision that a person arrested for DWI is “deemed to have consented” to submit to the taking of a breath specimen, Amaya or the State bore the initial burden of proof at the suppression hearing.  Because we hold that Amaya bore the initial burden of presenting some evidence that his deemed consent was involuntary, and because no evidence exists that Amaya’s consent was involuntary, we reverse the trial court’s suppression ruling.

II.  Factual and Procedural Background

Carol Lee Riddle, a detective with the Arlington Police Department, testified that on January 11, 2004, she was working as a uniformed patrol officer when she was dispatched to the scene of a major accident at the intersection of Collins and Sanford.  When she arrived, she saw that the accident involved two vehicles and she began her investigation.  During the course of her investigation, she detected an odor of alcohol on Amaya’s breath. She determined that Amaya had been driving one of the vehicles and was under the influence of alcohol.  She arrested him for the offense of DWI.  Because Amaya spoke Spanish, Detective Riddle called for a Spanish-speaking officer, but one was not available.

Detective Riddle transported Amaya to the jail and again inquired whether any Spanish-speaking employee was available to interpret for her.  She was informed that “throughout the whole city and in the jail, we did not have a single Spanish-speaking employee.”  So Detective Riddle took Amaya into the intoxilyzer room and attempted to conduct a DWI interview to the best of her ability.  Detective Riddle speaks Spanish “a little bit . . . enough to do basic communications and to do some sobriety tests.”

After Amaya performed the horizontal gaze nystagmus test, Detective Riddle gave him a copy of the DIC-24S, which contained the required statutory warnings printed in Spanish.  Detective Riddle then read the DIC-24 warnings to Amaya in English and encouraged him to follow along on the printed Spanish version.  She testified that Amaya “appeared to be following along as I was reading it in English.  I showed him where to start, where I was going to start reading on the form.  I pointed it out to him on his Spanish copy, and I began reading in English.”  She then read another form to Amaya in Spanish, which explained that he had the right to have a chemical test performed by a certified technician.

Detective Riddle testified:

A.  And then, on there, in Spanish, there is where you can ask for him to provide a breath specimen in Spanish, and I read that in Spanish.  And then I allowed him to read it.  And then he stated, “Yes.”

Q.  So at that time, was it your impression that the Defendant was able to read that part that you’re talking about in Spanish?

A.  Yes.

Q.  And was it your impression that the Defendant understood what he was reading?

A.  Yes.

The video tape recording from the intoxilyzer room shows Detective Riddle communicating with Amaya in Spanish.  Throughout the DWI interview, Detective Riddle repeatedly asks Amaya, “Comprende?”  And each time Amaya responds, “Si.”  At one point before the breath test is administered, Amaya asks a question in Spanish.  Detective Riddle takes a printed Spanish form over to Amaya and points to a particular place on the form.  Amaya squats a little and appears to read out loud the Spanish language Detective Riddle pointed to.  On the video tape, Amaya agrees three times to provide a breath specimen.

At the conclusion of the motion to suppress hearing, the trial court stated on the record,

because the statutory warning was not read in the Spanish language and we do not know whether or not the Defendant could read the Spanish warning sheet, we have no way of knowing if the Defendant understood, or at least substantially understood what the officer was telling him. . . .  I’ve watched him very carefully reviewing the Spanish warning sheet.  I find no indication that he understands, doesn’t understand.  I can’t tell. . . .  I can’t find that there has been substantial compliance under the 
Gonzalez
(footnote: 1) case, and therefore Defendant’s Motion to Suppress the Breath Test is granted.

III. Standard of Review

A trial court’s ruling on a motion to suppress evidence will not be set aside unless an abuse of discretion is found.  
Villarreal v. State
, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); 
State v. Derrow
, 981 S.W.2d 776, 778 (Tex. App.—Houston [1st Dist.] 1998, pet. ref’d).  We must afford almost total deference to the trial court’s determination of facts supported by the record, especially when the findings are based on the evaluation of the witnesses’ credibility and demeanor.  
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

In reviewing the trial court’s ruling, we apply a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).  We give almost total deference to the trial court’s determination of the historical facts and conduct a de novo review of the trial court’s application of the law to those facts.  
Id
.  The trial court is the sole finder of fact in a motion to suppress hearing, and it may choose to believe or disbelieve any or all of any witness’s testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

IV.  Consent to Breath Test

Section 724.011 of the transportation code, the implied consent statute, provides that a person arrested for suspected DWI is deemed to have consented to providing specimens for a breath or blood test.  
Tex. Transp. Code Ann.
 § 724.011(a) (Vernon 1999).  An adult person arrested for DWI must be warned that refusal to submit to a breath test will result in the following consequences: (1) evidence of the refusal will be admissible against the person in court, and (2) the person’s driver’s license will be suspended for not less than 180 days.  
Id.
 
§ 724.015(1)-(2) (Vernon Supp. 2006); 
Erdman v. State
, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993) (applying former version of section 724.015 imposing 90-day suspension).  The suspect must likewise be informed of the possible consequences if he submits to the test and the results of the test show a prohibited blood-alcohol level.  
See
 
Tex. Transp. Code Ann.
 § 724.015(3), (4).

A suspect’s consent to a breath test must be voluntary.  
Turpin v. State
, 606 S.W.2d 907, 914 (Tex. Crim. App. [Panel Op.] 1980) (applying former version of section 724.015).  For consent to a breath test to be deemed voluntary, a suspect’s decision must not be the result of physical pressure or psychological pressure brought to bear by law enforcement officials.  
See Thomas v. State
, 723 S.W.2d 696, 704-05 (Tex. Crim. App. 1986) (recognizing that consent to breath test is not voluntary if induced by physical force or mental coercion); 
Schafer v. State
, 95 S.W.3d 452, 455 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d) (recognizing that consent to breath test is not voluntary if induced by misstatement of direct statutory consequences of refusal).  A suspect’s decision to submit to a breath test must be his own, made freely, and with a correct understanding of the statutory consequences of refusal. 
 Erdman
, 861 S.W.2d at 893.

V.  Burden of Proof

The question here is whether the State or the defendant who has been arrested for DWI bears the initial burden of proof on the issue of the voluntariness of the defendant’s consent to a breath test.  Because section 724.011 provides that a person arrested for DWI is “deemed to have given his consent” to the taking of a breath sample, a statutory presumption of consent exists.  
Rodriguez v. State
, 631 S.W.2d 515, 516 (Tex. Crim. App. 1982).  In fact, the presumption of consent is so strong that “a person who is dead, unconscious, or otherwise incapable of refusal is considered 
not
 to have withdrawn the consent provided by Section 724.011.”  
Tex. Transp. Code Ann.
 § 724.014 (emphasis added).  Thus, the defendant bears the 
initial
 burden at the suppression hearing to show that evidence exists rebutting the statutory presumption that he voluntarily consented to submit a breath specimen.  
See, e.g., Kelly v. State
, 204 S.W.3d 808, 819 n.22 (Tex. Crim. App. 2006) (recognizing that defendant “had the initial burden to produce evidence to support a finding that she did not consent to Gosson’s blood draw”);
(footnote: 2) 
accord
 
Ford v. State
, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (recognizing that, in light of presumption of proper police conduct, defendant bears initial burden of producing evidence to support finding of improper police conduct such as proving that a search occurred without a warrant); 
Russell v. State
, 717 S.W.2d 7, 9-10 (Tex. Crim. App. 1986) (same).  The party with the burden of proof assumes the risk of nonpersuasion.  
Kelly
, 204 S.W.3d at 819.

VI.  Application of Law to the Present Facts

Thus, Amaya bore the initial burden of proof to show that his consent to submit a breath specimen was not voluntary.  Amaya did not testify that he could not read Spanish, nor did he call any family member or friend to so testify.  In short, Amaya points to no evidence that his consent to submit a breath specimen was not voluntarily given.  This is not a case where extra-statutory warnings were provided, purportedly inducing an involuntary consent.  
See, e.g., Erdman
, 861 S.W.2d at 893; 
Gette v. State
, 209 S.W.3d 139, 145 (Tex. App.—Houston [1st Dist.] 2006, no pet.);
 Reynolds v. State
, 163 S.W.3d 808, 811 (Tex. App.—Amarillo 2005) 
aff’d
, 204 S.W.3d 386 (Tex. Crim. App. 2006).  Nor is this a case where the defendant refused to submit a breath specimen based on inadequate warnings of the consequences of a refusal.  
See, e.g., State v. Woehst
, 175 S.W.3d 329, 332-33 (Tex. App.—Houston [1st Dist.] 2004, no pet.); 
Lane v. State
, 951 S.W.2d 242, 243 (Tex. App.—Austin 1997, no pet.); 
Jessup v. State
, 935 S.W.2d 508, 511 (Tex. App.—Houston [14th Dist.] 1996, pet. ref’d).

We afford almost total deference to the trial court’s determination that the evidence does not establish either that Amaya could or could not read the Spanish version of the DIC-24 provided to him.  
See Guzman
, 955 S.W.2d at 89.
(footnote: 3)  But because it was Amaya’s burden to point to some evidence rebutting the presumption arising from the deemed consent statute, this finding — that the evidence did not establish whether Amaya could or could not read the Spanish DIC-24 form — required the trial court to overrule Amaya’s motion to suppress.  Absent evidence that Amaya’s consent to submit a breath specimen was not voluntary, Amaya failed to meet his burden of proof.  
Kelly
, 204 S.W.3d at 819.  And Amaya bore the risk of nonpersuasion on the issue, meaning that an absence of evidence rebutting the statutory presumption of deemed consent required the denial of Amaya’s motion to suppress.  
See id.

Amaya’s specific argument on appeal is that he was not properly warned of the consequences of submitting a breath specimen because the statutory warnings were not read to him in Spanish.  But the video tape establishes that Officer Riddle did communicate with Amaya in Spanish and did provide the Spanish version of the DIC-24 to Amaya, pointing out to him the place where she would begin reading in English and asking him to follow along.  Thus, absent evidence that Amaya could not read the warnings set forth on the Spanish DIC-24S form provided to him, the record demonstrates substantial compliance with section 724.015 of the transportation code.  
See 
Tex. Transp. Code Ann.
 § 724.015; 
Gonzalez
, 967 S.W.2d at 458.  The trial court’s finding that she could not tell, one way or the other, whether Amaya was capable of reading the Spanish DIC-24 warnings demonstrates that Amaya did not meet his initial burden of proof concerning the voluntariness of his consent.  An ambiguous record will not rebut the statutory presumption of deemed consent. 

We sustain the State’s fourth point.

VII.  Conclusion

Having sustained the State’s fourth point, we need not address the State’s remaining issues.  
See
 
Tex. R. App. P.
 47.1.  We reverse the trial court’s order granting the motion to suppress and remand this case to the trial court.

SUE WALKER

JUSTICE

PANEL B: HOLMAN, WALKER, and McCOY, JJ.

PUBLISH

DELIVERED:
  March 22, 2007

FOOTNOTES
1:
In 
Gonzalez v. State,
 this court held that warnings to a DWI suspect need not track the statutory language verbatim, word-for-word.  
967 S.W.2d 457, 458 (Tex. App.—Fort Worth 1998, no pet.).  Substantial compliance is sufficient so long as the warnings given do not include extra-statutory warnings.  
Id.

2:
In 
Erdman
, the court of criminal appeals did not address the burden of proof issue because the State noted in its appellate brief that it “ha[d] a burden of showing voluntary consent to an intoxilyzer test.”  Thus, the court assumed without deciding that, under former Article 6701 
l
-5, section 2, the State had the burden of showing voluntary consent to a breath test.  
Erdman
, 861 S.W.2d at 893 n.2.  After making this assumption, the court of criminal appeals concluded that the State had not met its self-assumed burden in light of evidence that the trooper had given Erdman extra-statutory warnings that placed considerable psychological pressure on him.

3:
See State v. Bryant
, 161 S.W.3d 758, 760-61 (Tex. App.—Fort Worth 2005, no pet.) (recognizing that findings dictated into the record at the conclusion of a suppression hearing are entitled to the same consideration as written findings of fact and conclusions of law).