NO. 07-12-00038-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 13, 2012

───────────────────────

JOSEPH ROSS MILLER, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

───────────────────────

FROM THE COUNTY CRIMINAL COURT NO 10 OF TARRANT COUNTY;

NO. 1227460; HONORABLE PHILLIP ANDREW SORRELLS, JUDGE

───────────────────────

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant, Joseph Ross Miller, appeals his conviction for the offense of driving while intoxicated,[1] and subsequent sentence of confinement in the Tarrant County Jail for 120 days and a fine of $700.00.  The term of confinement was, however, suspended with appellant being placed on community supervision for a period of 24 months. Appellant appeals his conviction contending that the trial court erred in overruling his motion to suppress the results of his blood tests, and the evidence was insufficient to support the conviction.

---

[1] See TEX. PENAL CODE ANN. § 49.04(a) (West 2012).

Factual & Procedural Background

On September 11, 2010, at approximately 9:08 p.m., appellant was driving a blue 1996 BMW in Arlington, Texas. When appellant approached the intersection of Little Road and Highway 287, the light turned red. Appellant attempted to continue through the intersection and collided with a vehicle driven by Natasha Hawkins. After the collision, appellant's car momentarily stalled. Upon starting the car, appellant fled the scene. However, the front bumper of appellant's car fell off as a result of the collision. Attached to the bumper was the front license plate.

Arlington police officer John Welch was dispatched to the scene of the accident. Officer Welch found the front bumper with the license plate. Welch determined who the car was registered to and where that person lived. Officer Bryan Martin of the Arlington Police Department went to the location where the car driven by appellant was registered. Upon arrival at that residence, Welch found a blue BMW with the front bumper missing. Subsequently, Welch met appellant inside the residence. According to Martin, appellant appeared to be very intoxicated. Martin described appellant as highly emotional, to the point of becoming hysterical, while discussing the accident. Eventually, appellant became confrontational with Martin, which resulted in Martin deciding to arrest appellant. Appellant was handcuffed and placed in the back of Martin's patrol vehicle. Appellant then passed out or lost consciousness, which led Martin to decide to take appellant to the hospital instead of jail.

After arriving at the hospital, appellant either woke up or regained consciousness and became combative and acted somewhat erratic. While the emergency room staff

was attempting to evaluate appellant, he was thrashing about on the examination table and screaming. After appellant nearly kicked one of the emergency room personnel, the medical staff decided to sedate him in order to be able to complete the examination of appellant. Appellant was then sedated. After appellant lost consciousness, Martin asked that a specimen of appellant's blood be drawn to test for alcohol. Prior to requesting the blood sample, Martin had not read appellant the statutory warnings regarding giving a breath or blood specimen. Appellant remained in the hospital that night and was later charged with misdemeanor driving while intoxicated.

Appellant's trial counsel filed a motion to suppress the results of the blood test. By this motion, appellant contended that the implied consent statute was not applicable to him because he was not under arrest at the time of his blood draw. Further, appellant contended that, if he was under arrest at the time of the blood draw, the results should be suppressed because the officer did not provide him with the written and oral statutory warnings as required.

The trial court conducted a hearing on appellant's motion to suppress. Officer Welch provided the only testimony at the hearing. At the conclusion of the hearing, the trial court overruled appellant's motion to suppress the results of the blood test. The case then proceeded to trial on the merits.

At the trial of the case, Natasha Hawkins testified that she was driving the other car involved in the accident with appellant. According to her testimony, the accident occurred around 9:00 p.m. and she reported the accident by a 911 call within five minutes of the occurrence. The State then produced the testimony of Ben Jaffe, a

3

friend of appellant, who was a passenger in appellant's car at the time of the accident. Jaffe testified that appellant was driving when the accident occurred. Additionally, Jaffe stated that appellant said he panicked and fled the scene because he did not have his driver's license with him and could not afford to repair the other car. According to Jaffe, appellant did not appear intoxicated at the time of the accident. The State also produced a business affidavit that showed that appellant's auto insurance carrier had paid for the damage to Natasha Hawkins's car.

Welch testified about receiving the report of the accident at 9:08 and arriving at the scene at 9:16, where he then found the bumper from the BMW with the license plate attached. Martin then testified about going to the residence where the BMW was registered and meeting appellant. The record reflects that Martin arrived at appellant's home at 9:30 and that appellant appeared to be intoxicated from the beginning of Martin's interaction with him. Martin testified about the events that led him to arrest appellant and place him in the back of the patrol car, where appellant either passed out or went to sleep. Further, Martin explained about taking appellant to the hospital instead of the jail and the events that led the hospital staff to sedate appellant.

The lab report that contained the test of the blood specimen taken from appellant was introduced into evidence along with certain stipulations. The lab report reflected that appellant's blood alcohol content was .25 grams of alcohol per 100 milliliters of whole blood. Additionally, the stipulated evidence reflected that the blood draw was taken at 12:01 a.m. on September 12, 2010. The State also offered the testimony of Mark Fondren, the senior forensic chemist with the Tarrant County Medical Examiner's Office. Fondren testified about the number of drinks of alcohol, either beers, standard

4

glasses of wine, or mixed drinks, appellant would have had to drink to have a blood alcohol concentration of .25 at 12:01 on September 12, 2010. Fondren stated that a male of appellant's height and weight who encountered officers at 9:30 p.m. on the 11th of September, would have had to drink 12 standard alcoholic beverages to have a blood alcohol concentration of .25 at 12:01 a.m. on September 12, 2010. Fondren opined that the blood alcohol concentration could have gone up or down slightly depending upon the contents of appellant's stomach.

The State then rested and, after making a motion for directed verdict that the trial court overruled, appellant rested without putting on any evidence. After arguments, the jury convicted appellant of driving while intoxicated. The trial court heard the issue of punishment and sentenced appellant to 120 days confinement in the Tarrant County Jail and a fine of $700, with the term of confinement suspended for 24 months.

Appellant appeals the judgment of the trial court by two issues. First, appellant contends that the trial court erred in overruling his motion to suppress the results of the blood test. Second, appellant contends that the evidence is insufficient to support the judgment of the trial court. Disagreeing with appellant, we affirm.

### Sufficiency of the Evidence

Although raised as appellant's second issue, we will first address the sufficiency of the evidence to support appellant's conviction. See Chaney v. State, 314 S.W.3d 561, 565 n.6 (Tex.App.—Amarillo 2010, pet. ref'd) (citing TEX. R. APP. P. 43.3).

<u>Standard of Review</u>

In assessing the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); <u>Brooks v. State</u>, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010). "[O]nly that evidence which is sufficient in character, weight, and amount to justify a fact finder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction." <u>Brooks</u>, 323 S.W.3d at 917 (Cochran, J., concurring). We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by <u>Jackson</u>." <u>Id.</u> (Cochran, J., concurring). When reviewing all of the evidence under the <u>Jackson</u> standard of review, the ultimate question is whether the jury's finding of guilt was a rational finding. <u>See</u> <u>id.</u> at 906, 907 n.26 (discussing Judge Cochran's dissenting opinion in <u>Watson v. State</u>, 204 S.W.3d 404, 448–50 (Tex.Crim.App. 2006), as outlining the proper application of a single evidentiary standard of review). "[T]he reviewing court is required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." <u>Id.</u> at 899.

The sufficiency standard set forth in <u>Jackson</u> is measured against a hypothetically correct jury charge. <u>See</u> <u>Malik v. State</u>, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). Such a charge is one that accurately sets forth the law, is authorized by the indictment, does not unnecessarily increase the State's burden of

6

proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. Id. The "'law' as 'authorized by the indictment' must be the statutory elements of the offense" charged "as modified by the charging instrument." Curry v. State, 30 S.W.3d 394, 404 (Tex.Crim.App. 2000).

Analysis

In order to convict appellant of driving while intoxicated, as charged in the information, the State was required to prove:

1. Appellant,

2. operated a motor vehicle,

3. in a public place,

4. while intoxicated.

See TEX. PENAL CODE ANN. § 49.04(a). Appellant's contention is that the evidence is insufficient as to elements two and four. Appellant simply concludes, without any analysis, that the evidence is insufficient to show appellant operated a motor vehicle or, if he operated a motor vehicle, that he was intoxicated at that time. Appellant does not cite the Court to any portions of the record or specifically explain why the testimony presented fails a test of sufficiency. Rule 38.1(i) of the Texas Rules of Appellate Procedure requires that an appellant's brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i); Ruiz v. State, 293 S.W.3d 685, 691 (Tex.App.—San Antonio 2009, pet. ref'd). Further, appellant's only citation to authority to support his contention is to cite this Court to Jackson v. Virginia. We conclude that this is insufficient citation to

7

applicable legal authority. See TEX. R. APP. P. 38.1(i). The failure to discuss the evidence that supports appellant's complaints, present a clear and concise argument, or properly cite applicable legal authority results in nothing being presented for review. See Rocha v. State, 16 S.W.3d 1, 20 (Tex.Crim.App. 2000). Accordingly, appellant's issue is overruled.

Motion to Suppress

Appellant contends that the trial court's denial of the motion to suppress the results of the test of the blood draw was reversible error. Appellant's contention is centered on the failure of Officer Martin to advise appellant of his statutory warnings as provided in the DIC-24 form. See TEX. TRANSP. CODE ANN. § 724.015 (West Supp. 2012).[2]

Standard of Review

To review the denial of a motion to suppress, we apply a bifurcated standard of review. See Hubert v. State, 312 S.W.3d 554, 559 (Tex.Crim.App. 2010). We review the trial court's application of the law to the facts *de novo.* Id. However, we defer to the trial court's determination of credibility and historical fact. Id. Because the trial court is in position to see the witnesses testify and to evaluate their credibility, we must view the evidence in the light most favorable to the trial court's ruling. See Wiede v. State, 214 S.W.3d 17, 24 (Tex.Crim.App. 2007). When, as here, no findings of fact were requested nor filed, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record.

_____

[2] Further reference to the Texas Transportation Code will be by reference to "section ____" or "§ _____."

See State v. Ross, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000). The trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any theory of law applicable to the case. See Ramos v. State, 245 S.W.3d 410, 418 (Tex.Crim.App. 2008).

Applicable Law

Chapter 724 of the Texas Transportation Code contains the statutes regarding implied consent to the giving of a breath or blood specimen, and warnings required to be given to a person prior to the taking of a specimen of breath or blood. See §§ 724.011 (West 2011); 724.015. Section 724.011 provides that a person who is arrested for operating a motor vehicle while intoxicated is "deemed to have consented, subject to this chapter, to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration . . . ." Section 724.015 provides, in part, as applicable to the case before the Court, that, prior to an officer requesting a person to submit to giving a specimen of breath or blood, the officer is to inform the person orally and in writing that,

(1) if the person refuses to submit to the taking of the specimen, that refusal may be admissible in a subsequent prosecution;

(2) if the person refuses to submit to the taking of the specimen, the person's license to operate a motor vehicle will be automatically suspended, whether or not the person is subsequently prosecuted as a result of the arrest, for not less than 180 days;

Finally, section 724.014 provides that a person who is dead, unconscious, or otherwise incapable of refusal is considered not to have withdrawn the consent provided by section 724.011. § 724.014 (West 2011).

9

<u>Analysis</u>

With the forgoing understanding of the standard of review and the applicable statutes, we will now turn to appellant's issue. Appellant contends that, because Officer Martin failed to read the statutory warnings prescribed in section 724.015 prior to obtaining a specimen of appellant's blood for testing, the analysis of the blood testing is not admissible in appellant's trial for driving while intoxicated.

The record provides the following information. Martin arrested appellant at appellant's home and placed appellant in the back of his patrol car. After being placed in the back of Martin's patrol car, appellant passed out and was unconscious. Martin then decided to take appellant to the hospital instead of jail. Upon arriving at the hospital, appellant regained consciousness. However, upon regaining consciousness, appellant became very erratic and disoriented. Martin testified that, because of appellant's conduct, he did not have the opportunity to read the DIC-24 to appellant.[3] Martin further testified that appellant's conduct became an issue of safety for the emergency room personnel. Eventually, according to Martin, a decision was made by medical personnel to sedate appellant so that they could complete their examination of him. It was after appellant was sedated that Martin requested a sample of appellant's blood for testing purposes.

The gist of appellant's argument is that, since the statutory warnings were not given, the trial court should have excluded the results of the test much like a court would exclude a statement given without the benefit of the statutory warnings contained in

---

[3] The DIC-24 is the Texas Department of Public Safety form that contains the warnings listed in section 724.015. They are also known as the statutory warnings.

10

article 38.22 of the Texas Code of Criminal Procedure or the warnings mandated by Miranda v. Arizona.[4] To support this proposition, appellant cites the Court to a number of cases; however, the cases do not support the broad use of section 724.015 as an exclusionary rule.

First, appellant cites the Court to Tex. Dep't of Pub. Safety v. Latimer, 939 S.W.2d 240, 245 (Tex.App.—Austin 1997, no pet.) (per curiam), for the proposition that a specimen of breath or blood taken without the person first being given the warnings required by section 724.015 is unlawful and inadmissible. However, this is not the holding of the Latimer case. Latimer was an appeal from an administrative suspension of Latimer's driver's license, after he had been arrested for suspicion of driving while intoxicated. Id. at 242. The issue of the admissibility of the test results from the specimen was not discussed because it was not germane to the questions presented to the Austin Court of Appeals and, thus, the case does not support appellant's position. Likewise, in State v. Laird, a case that appellant contends supports his theory, the issue was who was authorized to take a specimen of blood. 38 S.W.3d 707, 713-14 (Tex.App.—Austin 2000, pet. ref'd). There, the court held that a blood sample drawn by a medical person not listed in section 724.017 as authorized to draw blood was not admissible in the defendant's driving while intoxicated trial. Id. at 715. According to the Austin court, the plain language of the statute required the holding that the blood test evidence was not admissible. Id. at 714. The plain language of section 724.015 does not compel this same holding as that language goes only to the use of the refusal in a subsequent trial or suspension of driver's license procedure. See § 724.015(1), (2).

---

[4] See Miranda v. Arizona, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The other cases cited by appellant deal with the use of refusal in a license suspension setting. Arnold v. State, 971 S.W.2d 588, 591 (Tex.App.—Dallas 1998, no pet.); Tex. Dep't of Pub. Safety v. Watson, 945 S.W.2d 262, 264 (Tex.App.—Houston [1st Dist.] 1997, no pet.). Watson simply does not stand for the proposition that appellant indicates. The exact quote that appellant would have us accept simply says that, "a specimen can be taken only if the person agrees to the request of a peace officer for one." Id. at 266. However, Watson addresses the requirement of the officer to read the statutory warnings contained in section 724.015 before obtaining a specimen. That is not, however, the dispositive issue in this case.

The record is absolutely clear on one matter; the officer did not read the statutory warnings. What is not clear is whether he was required to or did appellant's situation fall into the exception enumerated in section 724.014. This was the subject of the testimony of Martin. It was up to the trial court to determine what the operative facts were for purposes of his ruling, and we defer to the trial court's ruling on these matters. See Hubert, 312 S.W.3d at 559. However, the law is also clear that a person who has been arrested for driving while intoxicated is deemed to have consented to the taking of a breath or blood specimen. § 724.011. To overcome this consent, the burden was initially on appellant to present some evidence that his deemed consent was involuntary. See State v. Amaya, 221 S.W.3d 797, 802 (Tex.App.—Fort Worth 2007, pet. ref'd). The only testimony heard by the trial court was that appellant was unconscious at the time the specimen was actually drawn. Appellant's behavior led the medical personnel to decide to sedate him for his and their protection. Martin did not attempt to give appellant his DIC-24 warnings during the period of appellant's erratic

12

behavior. Based upon this testimony, the trial court denied appellant's motion to suppress the results of the blood test. Since the trial court did not make any findings of fact or conclusions of law or otherwise state the basis for its ruling, we view the record in the light most favorable to the trial court's ruling and assume findings in support of its ruling if support for those implied findings is found in the record. See Ross, 32 S.W.3d at 855.

In our case, the trial court could have found that appellant was unconscious or otherwise incapacitated pursuant to section 724.014. See § 724.014. The record contains testimony to support such a finding. Based upon this finding, appellant is considered not to have withdrawn his consent provided by section 724.011. See id. These findings, which are supported in the record, along with appellant bearing the initial burden of presenting some evidence that his deemed consent was involuntary, lead us to the conclusion that the trial court did not commit error in denying appellant's motion to suppress. See Amaya, 221 S.W.3d at 802. Therefore, appellant's issue is overruled.

Conclusion

Having overruled appellant's issues, the judgment of the trial court is affirmed.

Mackey K. Hancock
Justice

Publish.

13