

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-14-00143-CR

CHRISTOPHER ALEXANDER VUJOVICH, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 5th District Court
Cass County, Texas
Trial Court No. 2013-F-00484

Before Morriss, C.J., Moseley and Carter*, JJ.
Memorandum Opinion by Chief Justice Morriss

*Jack Carter, Justice, Retired, Sitting by Assignment

# MEMORANDUM OPINION

After Christopher Alexander Vujovich drove his vehicle off of a highway and into a shallow, muddy creek in Cass County, he was cooperative with investigating officers. Key elements of his cooperation were his admission to having ingested an antidepressant, some anxiety medication, and Ambien, a sleep-inducing medication used to treat insomnia, and his written and oral consents that his blood be drawn and tested. The testing of his blood revealed the presence of the three prescription medications. Vujovich was convicted by a jury of driving while intoxicated (DWI), third or more, and was sentenced to four years' imprisonment.

On appeal, Vujovich argues that the trial court erred in overruling his motion to suppress evidence obtained by a warrantless blood draw, that the jury's verdict of guilt is not supported by legally sufficient evidence,[1] that the trial court erred in instructing the jury of his stipulation that he was twice previously convicted of DWI, and that the trial court erred in excluding a report from a nontestifying expert, Dr. Gregory Atchison, who opined in the report on Vujovich's mental health and a proposed treatment plan.

We affirm the trial court's judgment because (1) Vujovich voluntarily consented to the blood draw, (2) legally sufficient evidence supports the jury's verdict of guilt, (3) there is no error in the trial court's jury charge, and (4) no error is preserved in the exclusion of Atchison's report.

---

[1]Vujovich also argues that the evidence is factually insufficient to support the jury's verdict. "We no longer review for factual sufficiency." *Hutchings v. State*, 333 S.W.3d 917, 919 n.2 (Tex. App.—Texarkana 2011, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 894–95, 902 (Tex. Crim. App. 2010)).

*(1)      Vujovich Voluntarily Consented to the Blood Draw*

Vujovich argues that the trial court erred in denying his motion to suppress the results of a blood draw, which corroborated his voluntary statements to the arresting officer that he had ingested prescription medication before the accident. His blood was drawn only after the arresting officer obtained Vujovich's voluntary oral and written consent.

"Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause." *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). "A driver's consent to a blood or breath test must be free and voluntary, and it must not be the result of physical or psychological pressures brought to bear by law enforcement." *Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012). "[T]he State must prove voluntary consent by clear and convincing evidence." *Id.* (citing *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011)).

In the portion of Vujovich's brief directly relevant to the issue of voluntariness, Vujovich argues "that alleged consent by an intoxicated person is not objectively reasonable." In support of this argument, Vujovich cites only to *Baldwin v. State*, 278 S.W.3d 367, 372 (Tex. Crim. App. 2009), a case which neither stands for Vujovich's proposition nor otherwise applies to this case. There, the Texas Court of Criminal Appeals decided that the defendant's response to an officer's question regarding the location of his identification did not constitute consent for the officer to search the defendant's pocket. *Id.* Nothing in the *Baldwin* case suggested that the defendant was intoxicated or that his consent was involuntary due to intoxication. Thus, Vujovich has failed to

3

cite to relevant authority supporting his proposition. Accordingly, this issue is inadequately briefed. *See Tong v. State*, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000).

Although this Court has no obligation to review inadequately briefed issues, we will address the merits of Vujovich's complaint. In our review of the trial court's denial of Vujovich's motion to suppress, we afford the trial court "'almost total deference to [its] determination of the historical facts . . . based on an evaluation of credibility and demeanor.'" *Fienen*, 390 S.W.3d at 335 (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). "The validity of an alleged consent is a question of fact." *Id.* at 333. In answering whether the State proved that Vujovich's consent was voluntary, we "'review the totality of the circumstances of a particular police-citizen interaction from the point of view of the objectively reasonable person.'" *Id.* (quoting *Meekins v. State*, 340 S.W.3d 454, 459 (Tex. Crim. App. 2011)). "The ultimate question is whether the person's 'will has been overborne and his capacity for self-determination critically impaired' such that his consent to search must have been involuntary." *Id.* (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26 (1973)). "[W]e will uphold the trial court's finding of voluntariness unless it is clearly erroneous." *Id.* at 335.

Vujovich had sustained injuries during the accident and was taken to a nearby emergency room. At the suppression hearing, Wayne Johnson, a trooper with the Texas Department of Public Safety (DPS), testified that he spoke to Vujovich on hospital grounds about the cause of the accident. Before administering the horizontal gaze nystagmus (HGN) test to determine whether Vujovich was intoxicated, Johnson first ruled out the likelihood of head trauma by observing that Vujovich's eyes had "equal tracking and equal pupil size." Johnson testified that Vujovich

4

exhibited six out of six cues during the HGN test and that he was unable to recite the alphabet or count backwards as instructed. As a result of Vujovich's poor performance during Johnson's tests, Johnson concluded that Vujovich was intoxicated.

According to Johnson, Vujovich initially stated that he had ingested only Wellbutrin, an antidepressant, several days before the accident. However, after failing Johnson's tests, Vujovich admitted that he had taken Ambien the night before the accident and both Wellbutrin and Lexapro, an anti-anxiety medication, the morning of the accident, which occurred at 6:30 a.m. Johnson testified that he read Vujovich the "DIC-24" statutory warning, asked for his consent to extract a specimen of his blood, and obtained his oral and written consent to a blood draw. During the suppression hearing, the State introduced the written consent form signed by Vujovich. Johnson testified that Vujovich did not withdraw his consent and never resisted the nurse's efforts to extract his blood, even though he was not handcuffed. Despite the fact that he was under arrest for DWI, Vujovich left the hospital after the blood draw because the hospital had released him from treatment.

To support his argument that his consent was involuntary, Vujovich testified that he "was asleep when [] driving as a result of the Ambien" and that he woke up when his vehicle hit the creek water. Vujovich claimed that his head hit the windshield, that he was disoriented, and that he did not remember speaking with Johnson or signing the consent form.

After hearing the evidence, the trial court found that Vujovich actually consented to the blood draw and that his consent "was positive and unequivocal and obtained without duress or collusion, actual or implied." We find no error in the trial court's ruling.

5

Vujovich testified that, although he may have been driving while asleep as the result of ingesting Ambien, the accident awakened him. Though he claimed that he hit his head against the windshield, Johnson testified that Vujovich's equal pupil size and equal tracking indicated an absence of head trauma. The hospital's decision to release Vujovich also refuted his claim of head trauma and confusion. Further, the trial court could have determined that Vujovich's initial failure to be forthcoming about the amount of medication he had taken indicated a state of consciousness. Nothing from Vujovich's testimony suggested that he was pressured to sign the consent form.

As the finder of fact, the trial court was free to disbelieve Vujovich's testimony that his consent was involuntary. Reviewing the totality of the circumstances of Vujovich's interaction with Johnson from the point of view of the objectively reasonable person, we cannot conclude that the trial court's finding of voluntariness was clearly erroneous. Accordingly, we overrule this point of error.

*(2)      Legally Sufficient Evidence Supports the Jury's Verdict of Guilt*

First, we address the inadequacy of Vujovich's appellate brief on this issue. In addition to supplying specific legal authority, an appellant must "provide legal arguments based on that authority." *Bell v. State*, 90 S.W.3d 301, 305 (Tex. Crim. App. 2002); *see* TEX. R. APP. P. 38.1(h), (i). While Vujovich's brief included the proper standard of review for legal sufficiency, there is no argument as to how or why the evidence is insufficient. Technically, as a result of his inadequate briefing, Vujovich has waived his legal-sufficiency complaint. *See McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997); *Miller v. State*, 387 S.W.3d 873, 877–78 (Tex. App.—Amarillo 2012, no pet.) (declining to address legal sufficiency complaint due to inadequate

6

briefing); *McIntosh v. State*, 307 S.W.3d 360, 365 (Tex. App.—San Antonio 2009, pet. ref'd); *Dornbusch v. State*, 156 S.W.3d 859, 872 (Tex. App.—Corpus Christi 2005, pet. ref'd) (issues challenging sufficiency of evidence waived when inadequately briefed); *Long v. State*, 137 S.W.3d 726, 737 (Tex. App.—Waco 2004, pet. ref'd); *Hutto v. State*, 977 S.W.2d 855, 858 (Tex. App.—Houston [14th Dist.] 1998, no pet.); *Purvis v. State*, 4 S.W.3d 118, 119 (Tex. App.—Waco 1999, no pet.) (proper presentation of sufficiency issue on appeal).

Nevertheless, in the interest of justice, we will address Vujovich's contention that the evidence was insufficient to support a finding of guilt. In evaluating legal sufficiency, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. Under a hypothetically correct jury charge, Vujovich committed the offense of DWI, third or more, if (1) he (2) operated (3) a motor vehicle (4) in a public place (5) while intoxicated, and (6) had

7

previously been convicted two times of any other DWI offense.[2]  *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b)(2) (West Supp. 2014).  "'Intoxicated' means:  (A) not having the normal use of mental or physical faculties by reason of the introduction of . . . a drug . . . or any other substance into the body."  TEX. PENAL CODE ANN. §  49.01(2) (West 2011).

Eric White, a trooper with the DPS, responded to the scene of the accident and found Vujovich on the side of the state highway with his partially-submerged car in the shallow creek. According to White, Vujovich claimed that the accident had occurred due to heavy traffic and drivers who were "jockeying for position."  White observed that Vujovich had slurred speech, was having trouble maintaining his balance, and was leaning on the guardrail.  Because he did not appear to be intoxicated by alcohol, White asked Vujovich if he had taken any medication and learned that he had ingested an antidepressant drug.  White believed Vujovich was intoxicated as a result of prescription medication.

Although the vehicle's airbag had been deployed, White testified that the windshield, which was cracked but still intact, had a "head print."  According to White, Vujovich had a "razor burn . . . on the bottom of his chin," but no other wounds.  As Vujovich was transported to the hospital, White called Johnson and instructed him to continue the investigation at the hospital so that he could photograph the accident scene.

During Vujovich's trial, Johnson recited many of the facts that were presented at the suppression hearing and testified about his conclusion that Vujovich's physical and mental

---

[2]Vujovich stipulated that he had previously been convicted two times of a DWI offense.  Because this element was uncontested, we will not address it directly in our legal sufficiency analysis.

8

faculties were impaired as a result of prescription medication. The State introduced an audiotape of Vujovich's seemingly lucid, casual chat with Johnson, which occurred on the day of the accident at the hospital. On tape, Vujovich initially told Johnson that he had not ingested any medication. As the questioning continued, Vujovich clarified this statement by telling Johnson that he had taken Wellbutrin two days before the accident. Corroborating Johnson's testimony, the audiotape proved that Vujovich could not recite the alphabet or count backwards as instructed. After he had failed these tests, Vujovich admitted that he had taken an Ambien pill on the night before the accident and one Lexapro and two Wellbutrin pills on the morning of the accident.[3]

White testified that, after he finished taking photographs of the accident scene, he met Johnson and Vujovich at the hospital and heard Vujovich voluntarily consent to the blood draw. The videotape demonstrated that, without any pressure or coercion, Vujovich voluntarily agreed to give a specimen of his blood. White transported the blood specimen back to the DPS Crime Laboratory (crime lab).

Michelle Melo, a forensic scientist at the crime lab, testified that the specimen of Vujovich's blood contained (1) the antidepressant citalopram, found in Lexapro; (2) hydroxyzine, an antihistamine used to treat a variety of conditions, including anxiety; and (3) zolpidem a sedative or hypnotic used in the treatment of sleep disorders and found in Ambien.[4] Melo testified that these drugs could impact a person's physical or mental faculties.

---

[3]According to White, Vujovich stated during a post-arrest interrogation that he had taken "a pink pill for sleep" on the night before the accident.

[4]Melo testified that the crime lab did not have the capability of quantifying the amount of these types of drugs in the blood.

Testifying in his own trial, Vujovich informed the jury that he was lawfully prescribed the medication because he had bipolar disorder and experienced panic attacks. He stated, "What made me drowsy . . . was the Ambien. I was in a dream, sleep driving." Doctor Karen Reinersten, a psychiatrist, testified (1) that she treated Vujovich after the accident, (2) that she renewed his prescriptions for Wellbutrin and Lexapro, which he had been taking before the accident, and (3) that her records indicated that Vujovich was also prescribed Ambien before the accident.

By Vujovich's own admissions, the accident occurred as a result of the prescription medication that resulted in his "sleep driving." Thus, at the time he was operating a motor vehicle in a public place, Vujovich did not have the normal use of mental or physical faculties as a result of the side effects of his prescription medication. We find that the evidence at trial was legally sufficient to prove that Vujovich committed DWI. Accordingly, we overrule this point of error.

*(3)        There is no Error in the Trial Court's Jury Charge*

The offense of DWI is a class B misdemeanor. TEX. PENAL CODE ANN. § 49.04(b) (West Supp. 2014). However, this offense becomes "a felony of the third degree if it is shown on the trial of the offense that the person has previously been convicted . . . two times of any other offense relating to the operating of a motor vehicle while intoxicated." TEX. PENAL CODE ANN. § 49.09(b)(2). Because the State alleged that Vujovich committed felony DWI, it was required to prove that he was twice before convicted of a DWI offense. *See* TEX. PENAL CODE ANN. §§ 49.04(a), 49.09(b)(2). The State accomplished this task by securing Vujovich's stipulation. *See Martin v. State*, 200 S.W.3d 635, 640 (Tex. Crim. App. 2006).

10

The trial court submitted the following instruction to the jury:

> You are instructed that the Defendant has stipulated that he has been two times previously convicted of being intoxicated while operating a motor vehicle in a public place. You are also instructed that such evidence cannot be considered by you in any manner as proving or tending to prove that the Defendant was intoxicated while driving or operating a motor vehicle on or about August 14th, 2012.

In spite of the fact that Vujovich informed the jury that he had two prior alcohol-related DWI convictions during his direct testimony at guilt/innocence, Vujovich argues that the instruction was erroneous because it "bolster[ed] the prosecution." We disagree.

Our review of alleged jury charge error involves a two-step process. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *see Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). First, we determine whether an error occurred. *Abdnor*, 871 S.W.2d at 731–32; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g), *reaff'd by Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).

The Texas Court of Criminal Appeals has ruled that, when a defendant stipulates to the prior jurisdictional convictions, the trial court's charge to the jury "must include some reference to the jurisdictional element of the two prior DWI convictions in a felony DWI trial . . . and some reference to the defendant's stipulation and its legal effect of establishing the jurisdictional element." *Martin*, 200 S.W.3d at 640–41. The trial court's charge to the jury complied with the requirements set forth in *Martin*. Accordingly, the jury instruction was proper. *Hollen v. State*, 117 S.W.3d 798, 802 (Tex. Crim. App. 2003). We overrule this point of error.

*(4)     No Error is Preserved in the Exclusion of Atchison's Report*

At trial, Vujovich attempted to offer a report of a nontestifying witness. In excluding this report, the trial court stated,

> THE COURT:  . . . . [T]here is a document consisting of two pages entitled interpretation of diagnosis which appears to be a report of a Dr. Gregory A. Atchison dated December 20, 2012. That report, in the opinion of the Court, is actually an expert report containing an opinion and proposed diagnosis and treatment plan by someone other than the testifying witness.
>
> . . . .
>
> As to the interpretation of diagnosis, I will sustain the objection [because there's not been proper predicate laid under the Business Records Act] plus that particular document, in the opinion of the Court, contains hearsay within hearsay and also contains the expert opinion of an expert who does not appear for purposes of testifying today, therefore *Crawford* rule is violated. And I presume that he was not tendered as an expert witness by the defense as required by the Code of Criminal Procedure before trial. Would that be an accurate statement?
>
> [DEFENSE COUNSEL]:  Yes, sir.

As demonstrated by the above excerpt, the trial court excluded the report for several reasons. Vujovich's argument on appeal, in its entirety, is as follows:

> Appellant submits that Appellant properly offered an established proof of the interpretation of the diagnoses covering Appellant prepared by Dr. Gregory Atchison on December 12, 2012, and that the trial court's exclusion of such properly tendered evidence was improperly, unfairly prejudicial to Appellant. Appellant established the proper predicate for introduction of Dr. Gregory Atchison's medical records covering Appellant. Rule 602, Texas Rules of Evidence.[5]

---

[5]Rule 602 of the Texas Rules of Evidence states, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." TEX. R. EVID. 602.

12

The brief fails to address the trial court's other reasons for excluding the report, including that it contained hearsay and double hearsay. Crucially, because there was no offer of proof of the report, it is not included in the appellate record, and its substance is not otherwise apparent from the record. Thus, Vujovich has failed to preserve this issue for our review as we are unable to properly evaluate the trial court's decision to exclude the report. *See Duke v. State*, 365 S.W.3d 722, 725–26 (Tex. App.—Texarkana 2012, pet. ref'd) (citing TEX. R. APP. P. 33.2; TEX. R. EVID. 103); *Harty v. State*, 229 S.W.3d 849 (Tex. App.—Texarkana 2007, pet. ref'd)). We overrule this point of error.

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     March 25, 2015
Date Decided:       April 10, 2015

Do Not Publish

13