

# NUMBER 13-13-00507-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

THE STATE OF TEXAS,                                        Appellant,

v.

JOSE RUIZ,                                               Appellee.

## On appeal from the 25th District Court
## of Gonzales County, Texas.

# DISSENTING OPINION

**Before Chief Justice Valdez and Justices Benavides, and Perkes**
**Dissenting Opinion by Justice Perkes**

I dissent from the majority's opinion for two reasons. First, I believe Sergeant McBride obtained the blood sample with appellee Jose Ruiz's implied consent. Second, I believe the totality of the circumstances in this case permit the taking of a blood sample without the necessity of a warrant.

## I. BACKGROUND

Sergeant Bethany McBride, with the Gonzales Police Department, was dispatched to a two vehicle accident around midnight on September 9, 2012. When Sergeant McBride arrived at the scene, she observed a tan Lincoln Navigator that had collided with a tan Pontiac. The driver of the tan Pontiac remained at the scene but the driver of the Lincoln Navigator had fled. As Sergeant McBride investigated the scene, two witnesses approached and gave her a description of the Lincoln's driver and stated that the driver had run behind a nearby car wash. Sergeant McBride looked in the Lincoln Navigator to determine the identity of the driver, and located insurance paperwork that belonged to Ruiz. While inside the vehicle, Sergeant McBride observed several Bud Light cans in the front seat area. While searching the area where the witnesses said Ruiz had fled, the police officers located Ruiz in a field behind the car wash. Ruiz was unresponsive and it took several officers to carry him to the patrol unit. Sergeant McBride noticed a very strong odor of alcoholic beverages coming from Ruiz and determined that he was unresponsive due to the amount of alcohol in his system.

Sergeant McBride drove Ruiz to the hospital, where she placed him under arrest for driving while intoxicated. When Sergeant McBride ran Ruiz's criminal history, she learned that Ruiz had four prior convictions for driving while intoxicated. Sergeant McBride prepared the necessary hospital paperwork to obtain a blood sample, and a qualified hospital lab technician drew Ruiz's blood. Ruiz remained unresponsive the entire time. Ruiz was indicted for DWI—third or more offense, a third-degree felony enhanced to a habitual felony offender. *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09(b)(2)

2

(West, Westlaw through Ch. 46 2015 R.S.).  Following his indictment, Ruiz filed a motion to suppress the blood evidence.

During the hearing on Ruiz's motion to suppress, Sergeant McBride explained that she was one of only two officers on duty for the Gonzales Police Department at the time, and that it would have been impracticable to remove one officer from duty to secure the warrant.  Sergeant McBride testified that there were no procedures in place to obtain a search warrant for blood draws and that it would have been difficult to locate a judge at midnight on a Saturday night.  Sergeant McBride further testified that if she were able to get a warrant, it would have taken two or three hours.  Sergeant McBride stated that the circumstances of the investigation—the accident, driver identification, Ruiz's fleeing and unresponsiveness—prolonged the case beyond a normal DWI investigation.

The State's argument at the hearing was twofold.  First, it argued that because Ruiz was incapable of refusing the blood test, he was deemed to have consented under implied consent.  Second, it argued that the circumstances of the investigation and arrest demonstrated exigency sufficient to dispense of the warrant requirement.

The trial court granted Ruiz's motion to suppress the blood evidence.  In its comprehensive findings of fact and conclusions of law, the trial court concluded that Ruiz did not revoke his consent to the blood draw under section 724.011 of the Texas Transportation Code.  The trial court further concluded that it was bound by *Missouri v. McNeely*, 133 S.Ct. 1552 (2013) and that no exigent circumstances existed.

## II.  BLOOD EVIDENCE

By its sole issue, the State asserts that the trial court erred when it granted Ruiz's

motion to suppress. Specifically, the State argues Ruiz was unconscious at the time of the blood draw and thus incapable of withdrawing his consent to the blood draw under the Texas Transportation Code. Alternatively, the State argues there were sufficient exigent circumstances present which justified the warrantless taking of Ruiz's blood sample. I agree with both of the State's arguments.

## A.     Implied Consent

Warrantless searches may be premised on consent. *See* TEX. TRANSP. CODE ANN. §§ 724.011, 724.012(b) (West, Westlaw through Ch. 46 2015 R.S.); *Schneckloth v. Bustamante*, 412 U.S. 218, 219 (1973).

The Texas Transportation Code provides that:

(a) If a person is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place, or a watercraft, while intoxicated, or an offense under Section 106.041, Alcoholic Beverage Code, the person is deemed to have consented, subject to this chapter, to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance.

*See* TEX. TRANSP. CODE ANN. § 724.011(a).[1]

Additionally, section 724.014 states that:

(a) A person who is dead, unconscious, or otherwise incapable of refusal is considered not to have withdrawn the consent provided by Section 724.011.

. . . .

(c) If the person is alive but is incapable of refusal, a specimen may be taken by a person authorized under Section 724.016 or 724.017.[2]

---

[1] The trial court specifically found that Ruiz was under arrest prior to the taking of the blood sample.

[2] These sections involve the procedures for taking a sample and qualifications of the person taking

*See* TEX. TRANSP. CODE ANN. §§ 724.014(a), (c) (West, Westlaw through Ch. 46 2015 R.S.).    The presumption of consent is so strong that a person who is dead, unconscious, or otherwise incapable of refusal is considered not to have withdrawn the consent provided by Section 724.011.    *State v. Amaya*, 221 S.W.3d 797, 800 (Tex. App.—Fort Worth 2007, pet. ref'd).

The uncontroverted evidence shows that Ruiz was unconscious throughout the entire encounter with law enforcement, including the blood draw at the hospital.    The testimony supports the trial court's finding that Ruiz never affirmatively revoked his consent under section 724.011.    Ruiz was precisely the type of person—a person incapable of refusal—contemplated by section 724.014.    *See Miller v. State*, 387 S.W.3d 873, 880–81 (Tex. App.—Amarillo 2012, no pet.) (holding that because defendant was incapacitated, he was considered not to have withdrawn consent provided by section 724.011); *Amaya*, 221 S.W.3d at 802.    This factual scenario is the type of situation where implied consent makes perfect sense.    To hold otherwise would render ineffective the entire implied consent statutory scheme.

The majority states that it refuses to read the implied consent statute "expansively", but then requires the State, contrary to the plain language of the statute, to prove that the consent was freely and voluntarily given.    Such a reading encumbers the State with the impossible task of obtaining consent freely and voluntarily from an unconscious person. While the majority correctly states that consent must be freely and voluntarily given, the cases it relies on are factually distinguishable.    *See Bumper v. North Carolina*, 391 U.S.

---

the sample. *See* TEX. TRANSP. CODE ANN. §§ 724.016, 017 (West, Westlaw through Ch. 45 2015 R.S.)

543, 546 (1968) (examining consent in the context of police coercion); *Miller v. State*, 393 S.W.3d 255, 266 (Tex. Crim. App. 2012) (explaining defendant revoked consent for officers to enter apartment after domestic violence investigation was complete); *Valtierra v. State*, 310 S.W.3d 442, 452 (Tex. Crim. App. 2010) (holding that in context of drug possession case, "[o]nce permitted into a residence, a police officer may take action only in accordance with the purpose for which he was invited or allowed into the residence."); *Fienen v. State*, 390 S.W.3d 328, 333 (Tex. Crim. App. 2012) (holding that trial court did not abuse its discretion in finding that defendant gave consent for breath sample when defendant vacillated between granting and withdrawing consent in conversation with officer); *Forsyth v. State*, 438 S.W.3d 216, 222 (Tex. App.—Eastland 2014, pet. ref'd) (holding that circumstances required search warrant to collect blood evidence where defendant explicitly refused to provide blood sample during DWI investigation).

Ruiz's blood sample was taken pursuant to implied consent as provided by the transportation code. *See* TEX. TRANS. CODE ANN. §§ 724.011, 724.014. Because the implied consent laws in this instance do not offend the Fourth Amendment, I would conclude that the blood sample was obtained legally. *See Miller,* 387 S.W.3d at 880–81; *see also Anderson v. State*, No. 03–09–00041–CR, 2010 WL 3370054, at *3 (Tex. App.—Austin Aug. 26, 2010, pet. ref'd) (mem. op.) (not designated for publication).

**B.    Exigency**

*Missouri v. McNeely*, relied on by the trial court, answered the narrow question regarding whether the natural metabolization of alcohol in the bloodstream presents a per se exigency that justifies an exception to the Fourth Amendment's search warrant

6

requirement for nonconsensual blood testing in drunk-driving cases. *See* 133 S.Ct. 1552, 1568 (2013). *McNeely*, however, further recognizes and affirms the totality of circumstances approach in deciding whether a warrant is required. *See id.* at 1559 (citing *Schmerber v. California*, 384 U.S. 757 (1966)). *McNeely* contemplates situations where "circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test." *Id.* at 1561.

*McNeely* supports a finding of exigency sufficient to justify the warrantless blood test in this case. After arriving at the scene of an accident in the middle of the night, Sergeant McBride was required to not only investigate the scene of the accident but also required to find Ruiz and identify him as a driver involved in the accident. Additionally, when Sergeant McBride was finally able to locate Ruiz, he was unconscious and in need of medical attention. Sergeant McBride testified that no magistrate was on duty, and that it would have taken time to find one, drive the warrant to their residence to have it signed, and then return to the hospital to serve the warrant. She estimated that obtaining a warrant would have taken two or three hours and that it was impractical to remove one of the only two officers on duty that night in order to prepare a search warrant affidavit. Under these circumstances, it was reasonable for Sergeant McBride to believe that she was facing the imminent destruction of evidence. *See Schmerber*, 384 U.S., at 771 (holding that warrantless search was legal when "there was no time to seek out a magistrate and secure a warrant").

Because the blood evidence was taken with implied consent, and, alternatively,

7

under exigent circumstances, I would sustain the State's issue.

### III.    CONCLUSION

I would reverse the order of the trial court and remand for further proceedings.


GREGORY T. PERKES
Justice

Publish.
TEX. R. APP. P. 47.2(b)

Delivered and filed the
27th day of August, 2015.