ACCEPTED
03-14-00194-CV
3879773
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/23/2015 1:51:49 PM
JEFFREY D. KYLE
CLERK

**No. 03-14-00194-CV**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/23/2015 1:51:49 PM
JEFFREY D. KYLE
Clerk

*In the Court of Appeals*
*Third District of Texas — Austin*

**TEXAS DEPARTMENT OF PUBLIC SAFETY,**
*Appellant*

V.

**CODY LITTLEPAGE**,
*Appellee*

*Appealed from County Court at Law Number 2, Williamson*
*County, Texas; Before the Honorable Timothy Wright*

## APPELLEE'S BRIEF

Amber D. Farrelly
Texas Bar No. 24069671
BAIRD☆FARRELLY CRIMINAL DEFENSE, PLLC
2312 Western Trails Blvd Ste. 102-A
Austin, TX 78745
Tel. 512-804-5911
adfelaw@gmail.com

***Attorney for Appellee, Cody Littlepage***

**ORAL ARGUMENT REQUESTED**

1

**No. 03-14-00194-CV**

TEXAS DEPARTMENT OF PUBLIC SAFETY,
Appellant

V.

CODY LITTLEPAGE,
Appellee

---

REQUEST FOR ORAL ARGUMENT

---

Appellee, Cody Littlepage, believes that oral argument might benefit the Court in this case and respectfully requests that it be granted.

# TABLE OF CONTENTS

REQUEST FOR ORAL ARGUMENT……………………………………………...2

TABLE OF CONTENTS……………………………………………………....3

INDEX OF AUTHORITIES…………………………………………….……4

INDEX OF ABBREVIATIONS……………………………………...….5

STATEMENT ON ORAL ARGUMENT………………………….………6

APPELLEE'S BRIEF……………………………………………….……..7

STATEMENT OF FACTS……………………………………...……….8

SUMMARY OF THE ARGUMENT……………………………...……9

CONCLUSION…………………………………………………...…23

PRAYER…………………………………………………….…23

CERTIFICATE OF COMPLIANCE…………………………….…24

CERTIFICATE OF SERVICE……………………………………...…25

INDEX OF APPENDICES……………………………………………26

# INDEX OF AUTHORITIES

**CONSTITUTIONS**

U.S. CONST. Amend. V, VI, XIV

Tex. Const. art. I, §10 and 19

**STATUTES**

Rehabilitation Act of 1973, 29 U.S.C. §794

The Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §12101

TEX. TRANS. CODE § 724.015

TEX. TRANS. CODE § 724.032

TEX. TRANS. CODE § 724.042

**CASES**

*Erdman v. State*, 861 S.W.2d 890, 893 (Tex.Crim.App. 1993)………………….…..16

*Ex parte Ard*, No. AP-75,704, slip op. at 2,
   (Tex.Crim.App. March 11, 2009)(opinion not designated for publication)………...10

*Ex parte Reed*, 271 S.W.3d 698, 727 (Tex.Crim.App. 2008)……………...…….…9

*Landin v. Tex. Dep't of Pub. Safety*, 475 S.W.2d 594
   (Tex.Civ.App.—Dallas 1971, no writ)……………………………………….....19

*Lane v. State*, 951 S.W.2d 242, 244 (Tex.App.-Austin 1997, no pet.)……………...18

*Nebes v. State*, 743 S.W.2d 729 (Tex.App. 1988)…………………………….…..16

*Raesner v. Tex. Dep't of Pub. Safety*, 982 S.W.2d. 131, 132
   (Tex. App.-Houston [1st Dist.] 1998, pet. Denied)………………………...…….9

*State v. Amaya*, 221 S.W.3d 797
  (Tex.App.-Fort Worth 2007, pet. Ref'd)……………………………………….……19

*TX DPS v. Jauregui*, 176 S.W.3d 846, 848-849 (Tex.App. 2005)………13, 16, 18, 19

<u>INDEX OF ABBREVIATIONS</u>

| ADA | Americans with Disabilities Act |
|-----|--------------------------------|
| ASL | American Sign Language |
| ALJ | Administrative Law Judge |
| ALR | Administrative Law Review |

## <u>STATEMENT ON ORAL ARGUMENT</u>

The Court should grant oral argument for the following reasons:

   a.   The issues presented have not previously been authoritatively decided. *See* Tex. R. App. P. 39.1(b).

   b.   Oral argument will give the Court a more complete understanding of the facts presented in this appeal. *See* Tex. R. App. P. 39.1(c).

   c.   Oral argument will allow the Court to better analyze the complicated legal issues presented in this appeal. *See* Tex. R. App. P. 39.1(c).

   d.   Oral argument will significantly aid the Court in deciding this case. *See* Tex. R. App. P. 38.1(e), 39.1(d).

_____

TEXAS DEPARTMENT OF PUBLIC SAFETY,
APPELLANT
V.
CODY LITTLEPAGE,
APPELLEE

_____

**APPELLEE'S BRIEF**

Cody Littlepage, appellee, respectfully submits his brief in response to appellant's appeal.

For clarity and brevity, the appellee, Cody Littlepage, will maintain references as established by the Texas Department of Public Safety.  Citations to Appellant's brief will be AB at [page number].

## STATEMENT OF FACTS

Deputy Reynaldo Ramirez arrested Cody Littlepage for driving while intoxicated and was responsible for providing the DIC-24 and requesting a breath or blood specimen. The evidence shows Littlepage is deaf[1] and communicates *via* American Sign Language (ASL).[2] Littlepage requested an ASL interpreter by referring to the "deaf law."[3] Nevertheless, Deputy Ramirez, who does not speak ASL, did not request an interpreter.[4]

After an extensive and difficult struggle with communication *via* written word,[5] often times where it seemed Littlepage did not understand,[6] Deputy Ramirez arrested Littlepage. Deputy Ramirez placed Littlepage's hands behind his back, handcuffed him and placed him in the patrol vehicle.[7] Deputy Ramirez testified that he showed Littlepage the DIC-24 and orally requested a specimen.[8] Deputy Ramirez did not tell Littlepage what the DIC-24 was or its purpose.[9] Littlepage glanced at the DIC-24[10] before Deputy Ramirez stated that Littlepage's non-response would be

---

[1] CR 54, 58-59, 76
[2] CR 70
[3] CR 55, 74
[4] CR 63
[5] CR 55
[6] CR 64, 71, 79
[7] CR 77
[8] CR 77
[9] CR 74
[10] CR 77

8

considered a refusal.[11]  Due to his deafness, Littlepage was unable to hear anything requested or stated by Deputy Ramirez.  Further, Littlepage was physically unable to respond via sign language due to being handcuffed with his hands behind his back.

Despite the Department's position, the evidence shows that Littlepage did not refuse to provide a breath or blood specimen,[12] and given the unique circumstances of this situation, does not authorize a license suspension.

## ARGUMENT

## I.  THE PROCEEDINGS BELOW

The Administrative Law Judge (ALJ) found that Littlepage was "properly asked to submit a specimen of breath,"[13] and that he refused.[14]  Littlepage appealed to Williamson County Court Two, contending Littlepage was not properly asked to submit a specimen, and there was no showing that Littlepage refused to provide a specimen.  Judge Tim Wright agreed and reversed the decision of the ALJ.  Judge Wright was not required to accept or defer to findings not supported by the record and was authorized to make contrary findings. *Ex parte Ard*, No. AP-75,704, *slip op*. at 2, (Tex.Crim.App. March 11, 2009)(*opinion not designated for publication*), *citing Ex parte Reed*, 271 S.W.3d at 727.

---

[11] CR 77-78
[12] CR 78
[13] ALJ Decision dated October 3, 2013
[14] *Id*.

## II. REFUSAL

The ultimate issue in this case is whether Littlepage knowingly and intelligently refused to provide a breath sample. Transportation Code § 724.032(a) notes two ways a person can refuse:

> If a person refuses to submit to the taking of a specimen, whether *expressly* or because of an *intentional failure* of the person to give the specimen.

Just as it is the State's burden to show voluntary submission of a breath test, it is the State's burden to show a refusal. Texas Transportation Code §724.042 states that the issues at a hearing are (1) reasonable suspicion or probable cause existed to stop or arrest the person; (2) probable cause existed to believe that the person was operating a motor vehicle in a public place while intoxicated; (3) the person was placed under arrest by the officer and *was requested to submit to the taking of a specimen*; **and** (4) *the person refused to submit to the taking of a specimen on request of the officer.* (emphasis added).

The Department concedes that Transportation Code 724.015[15] provides that when a driver is arrested for driving while intoxicated, he *must* be warned of the

---

[15] § 724.015. INFORMATION PROVIDED BY OFFICER BEFORE REQUESTING SPECIMEN. Before requesting a person to submit to the taking of a specimen, the officer shall inform the person orally and in writing that:

(1) if the person refuses to submit to the taking of the specimen, that refusal may be admissible in a subsequent prosecution;

(2) if the person refuses to submit to the taking of the specimen, the person's license to operate a motor vehicle will be automatically suspended, whether or not the person is subsequently prosecuted as a result of the arrest, for not less than 180 days;

statutory consequences of refusal to provide a breath or blood specimen.[16]  The issue in this case is whether Deputy Ramirez properly provided the warnings to Littlepage, a deaf person, and whether Littlepage refused to submit to the taking of a blood or breath test.  Littlepage contends that because of his deafness, Deputy Ramirez never *made a proper request for a specimen and Littlepage did not refuse, either expressly or by intentional failure, to provide a specimen.*

## A.  *Littlepage Understood Written English*

The Department asserts that Littlepage understood English to a degree in which he was able to read the statutory warnings on the DIC-24, and then intentionally refused to answer Deputy Ramirez's request for a breath specimen. Deputy Ramirez testified that "this [was] the most difficult test [he had] ever done" because Littlepage is deaf.[17]  Deputy Ramirez testified that he and Littlepage communicated via "the written word,"[18]  noting that Littlepage would answer by circling 'yes' or 'no.'[19]

The Department maintains that Littlepage appeared to understand English,[20] and that "given the fact that Littlepage is deaf, the presentation of the warnings in

---

[16] AB 7
[17] CR 70
[18] CR 55
[19] CR 55
[20] AB 7

written English constituted substantial compliance."[21]   In support of this argument, the Department relies on *TX DPS v. Jauregui 176 S.W.3d 846*, but *Jauregui* is easily distinguishable because, the defendant acknowledged that he understood the statutory warnings whereas Littlepage did not.[22]

Here, the record does not contain any affirmative remarks regarding understanding the warnings or the DIC-24.   Instead, Deputy Ramirez testified that there were times when Littlepage seemed to not understand[23] and when Littlepage's written responses did not make sense in the English language.[24]

Deputy Ramirez acknowledged that ASL and English were not the same language.[25]   After questions regarding the fact that Littlepage is deaf, Deputy Ramirez admitted that it was probable that there was a communication barrier,[26] and that it was possible that Littlepage did not understand what Deputy Ramirez was writing.[27]

The record is unclear as to whether Deputy Ramirez asked Littlepage via writing if he would read the DIC-24.  Deputy Ramirez testified that after Littlepage

---

[21] AB 7

[22] *TX DPS v. Jauregui*, 176 S.W.3d 846, 850 (Tex.App. 2005), "When [the officer] provided Jauregui a set of written warnings at the jail, Jauregui stated, 'I understood this, I don't need to read it.'  Jauregui then refused for a second time to provide a breath specimen."

[23] CR 64

[24] CR 64

[25] CR 69

[26] CR 71

[27] CR 79

was arrested, Deputy Ramirez "held [the DIC-24] up to him,"[28] and Littlepage "glanced at it."[29] The record shows that Deputy Ramirez did not tell Littlepage what the DIC-24 was or point out the heading to Littlepage.[30] However, Deputy Ramirez testified that he did *state*, "Here's the Statutory Warnings, yes or no?"[31]

When asked if he wrote or said that statement, Deputy Ramirez testified that he *said it* but did not recall if he wrote it.[32] There is no evidence that this statement was written to Littlepage. However, even if the statement was written, Deputy Ramirez testified that "[Littlepage] didn't circle yes or not [sic] that he would read it or wouldn't,"[33] thereby not providing a refusal.

In regards to the question as to whether Deputy Ramirez requested that Littlepage read the warnings, the evidence does not support this. There is no evidence of this written question and it was physically impossible for Littlepage to have responded -- once Littlepage was placed under arrest, all communication between he and Deputy Ramirez ceased because he was physically unable to respond. He could not respond to the DIC-24 to either refuse or consent because he was handcuffed with his hands behind his back.

---

[28] CR 77
[29] CR 77
[30] CR 74
[31] CR 77
[32] CR 77
[33] CR 55

## B. *Informed Decision*

The Department properly states that "a peace officer is directed to provide certain warnings before requesting a driver's consent to an alcohol concentration test, so the driver *has the opportunity to make an informed decision* about taking or refusing the test."[34]

"The purpose behind section 724.015 is 'to ensure that a person who refuses to give a requested specimen does so with a full understanding of the consequences.' *Nebes v. State*, 743 S.W.2d 729, 730 (Tex.App.-Houston [1st Dist.] 1987, no pet.)." *TX DPS v. Jauregui*, 176 S.W.3d 846, 849 (Tex.App. 2005)

In order for an informed decision to be made, one must understand the options or the questions being posed to him. Littlepage did not understand and therefore never had the opportunity to make an informed decision.

"It is implicit in Article 6701 *l*-5, §2, that a suspect's decision to submit to a breath test must truly be her own, made freely and with the correct understanding of the actual statutory consequences of refusal." *Erdman v. State,* 861 S.W.2d 890, 893 (Tex.Crim.App. 1993)

Further, the Department asserts that Littlepage "*deliberately ignored* the warnings Deputy Ramirez presented and *refused to answer* the deputy's request for a breath specimen." However, Ramirez acknowledged that speaking or reading the

---

[34] AB 9

DIC-24 aloud to Littlepage would be ineffective because he could not hear.[35] Ramirez testified that he stated orally, "Here's the Statutory Warnings, yes or no?"[36] And that he then stated, "Then I will consider this a refusal?" He replied, "Yes, ma'am."[37]

The evidence shows that Littlepage was never given the warnings in a way that he was able to have a full understanding of what was being asked of him or the consequences. Littlepage was never provided the warnings in a language he could understand, ASL. Therefore no intelligent waiver or refusal could be made by Littlepage.

## C. No Refusal

The Department contends that Littlepage "refused to answer the deputy's request for a breath specimen."[38] However, the evidence plainly shows that Littlepage did not refuse:

Littlepage did not understand the DIC-24 or its purpose; Deputy Ramirez testified he did not recall if he told Littlepage what the DIC-24 was or its purpose.[39]

---

[35] CR 76
[36] CR 77
[37] CR 78
[38] AB 4
[39] CR 74

Ramirez acknowledged that Littlepage may not have known what the DIC-24 was.[40]

> Q: Did he know—do you know if he knew what it was?
> A: No, ma'am.

Littlepage's silence was not a refusal but rather was due to his inability to physically hear Deputy Ramirez and should not have been taken as a refusal. When asked if he received his refusal on the form, Deputy Ramirez answered that "He didn't answer so he didn't refuse…he wouldn't say yes or no."[41] Ramirez further testified that Littlepage did not expressly tell him that he would not give a specimen.[42]

> Q: Did he expressly tell you that he would not give a specimen?
> A: No.

In *Jauregui*, there was "no evidence that the appellant did not understand the warnings or that this failure to receive the warnings in writing had any impact on his decision to take the breath test." *Jauregui*, 176 S.W.3d at 849-850 (Tex.App. 2005) citing *Lane v. State*, 951 S.W.2d 242, 244 (Tex.App.-Austin 1997, no pet.).

The Department assumes that Littlepage understood the warnings. However, the evidence shows the contrary. During the entire DWI investigation, Deputy Ramirez and Littlepage communicated via writing and circling of "yes" or "no." The evidence also shows that there were communication difficulties throughout, when

---

[40] CR 77
[41] CR 56 (emphasis added)
[42] CR 78 (emphasis added)

Deputy Ramirez could not understand Littlepage and vice versa.[43]  When Deputy Ramirez presented Littlepage with the statutory warnings, he did so orally, without writing and Littlepage gave no response.

In *Jauregui*, where "the evidence demonstrated that the purpose of section 724.015 had been fulfilled:  Jauregui had been informed of the consequences of his failing to provide a breath specimen, and he had indicated that he understood those consequences."  176 S.W.3d at 850.  In the instant case, all the evidence points to the fact that Littlepage was not able to give a response because he neither understood the warnings nor heard the request for a specimen, therefore the purpose of section 724.015 was not fulfilled.

## III.  LITTLEPAGE DISTINGUISHED

The Department points to the cases of *State v. Amaya*[44] and *Landin v. Tex. Dep't of Pub. Safety*[45] to argue that Deputy Ramirez substantially complied with the statute to provide warnings to Littlepage.  The Department maintains that Littlepage understood those warnings and subsequently refused.  However, this is the proverbial comparison of apples and oranges.

In both *Amaya* and *Landin*, the defendants spoke Spanish.  These cases cannot

---

[43] CR 71
[44] *State v. Amaya*, 221 S.W.3d 797 (Tex.App.-Fort Worth 2007, pet. Ref'd).—gave defendant warnings in two languages, English and Spanish.
[45] Landin v. Tex. Dep't of Pub. Safety, 475 S.W.2d 594 (Tex.Civ.App.—Dallas 1971, no writ)

control the instant case because they dealt with individuals who were able-bodied and could communicate with the officers. Those cases focused on being given the warnings in either English or Spanish.

In the case at bar, Littlepage is completely and totally deaf. He has no ability to hear spoken language. Consequently, he was unable to hear what Deputy Ramirez said or asked. Further, Littlepage could not speak to Deputy Ramirez or reply to requests. Although Littlepage utilizes another language, ASL, the central issue is that he is a disabled person who cannot communicate or express himself to Deputy Ramirez.

The Department concedes that they have the burden in the current case to show that Littlepage sufficiently understood the warnings to give an informed waiver. They did not meet that burden. While the Department at most argues that Littlepage appears to understand English enough to answer yes or no to field sobriety tests, there is no evidence that the communication regarding the statutory warnings was understood. Deputy Ramirez did not emphasize what the warnings were or receive a response from Littlepage that the acknowledged or understood the DIC-24. This is substantiated by the fact that all communication, however limited, ceased when Littlepage was handcuffed with his hands behind his back and put in the patrol car.

Strict compliance is not required when the warnings can be given either orally

and/or in writing. Here, this is not an option for a deaf person: (1) there is no way to provide the warnings orally without the aid of an ASL interpreter; and, (2) since there is no written form of ASL, providing the warnings in writing is impossible.

Clearly *Amaya* and *Landin* are spoken language cases and do not apply to the case at bar. It is clear that Littlepage is unique and distinct. The evidence shows that Littlepage is deaf, and he physically is unable to hear; that he communicates in ASL; that Deputy Ramirez does not understand ASL; that deafness is a recognized disability under the ADA; that no interpreter or accommodations were made for Littlepage; ASL has no written language; that Littlepage was arrested and handcuffed behind his back; Littlepage had no ability to communicate after handcuffed; Deputy Ramirez read the warnings in English; Littlepage was not able to hear that reading and was not able to read them on his own; that he was not told what DIC-24 was for; that Littlepage was not expressly asked by Deputy Ramirez to provide a sample; that he was verbally told to respond but could not do so because he could not hear the request; that he was verbally told that a no answer will be taken as a refusal; that he did not hear this request; and that he never expressly or intentionally refused to provide a breath or blood sample.

Deputy Ramirez knew Littlepage was deaf.

Q: And you noted that he was deaf?
A: Yes, ma'am.
Q: Did he tell you he was deaf?

A: Yes, ma'am.[46]

Deputy Ramirez testified that he attempted to secure an interpreter. However, when asked on cross-examination about an interpreter, Deputy Ramirez testified that he did not know if there was an interpreter available or not because he did not know if one was even called.[47] Although the Department argues that Littlepage understood everything that was communicated and asked of him, Deputy Ramirez stated there were times when Littlepage seemed to not understand.[48] Deputy Ramirez replied, "yes, ma'am" and that "[Littlepage's] English grammar didn't make sense."[49] Deputy Ramirez acknowledged that there was a communication barrier between himself and Littlepage.[50]

Section 724.015 requires that the officer "shall *inform* the person orally and in writing" regarding the consequences of refusing to submit a specimen. That was not done in this case. The evidence shows that Littlepage communicated via sign language and Deputy Ramirez was unable to understand him.[51]

## IV. DUE PROCESS

Both the Department and Deputy Ramirez acknowledge that Littlepage's

---

[46] CR 58-59
[47] CR 63
[48] CR 64
[49] CR 64
[50] CR 71
[51] CR 70

deafness is a recognized disability under the ADA.[52] Because of this, the issue extends beyond a single spoken language comparison. It encompasses equal protection under the due process clause. Although the Department asserts that Littlepage did not raise the issue of due process, the evidence shows that the issue was raised with the trial court.[53]

When the Constitution has been interpreted to require language access, the issue is typically framed in terms of the Sixth Amendment. Likewise, the Fifth and Fourteenth Amendments' due process clauses have been employed to justify the right to interpreters within the courtroom and access to the justice system. Due process requires more than just the appearance of equality within the courtroom. Due process requires proceedings a person can understand both inside the courtroom and while interacting with law enforcement during the investigatory phase.

Disabled persons are afforded extra protection to ensure justice and due process. Deputy Ramirez was aware that Littlepage was disabled. When asked,

> Q: Okay. Would you agree that hearing impairment is a disability?
> A: Yes, ma'am.
> Q: As recognized by the Americans with Disabilities Act?
> A: That's why I recognize it, yes, ma'am.[54]

Title II of the Americans with Disabilities Act (ADA) requires state and

---

[52] CR 61
[53] RR 14-15
[54] CR 61

local governments to make their programs, services, and activities accessible to individuals with disabilities, including individuals who are deaf or hard of hearing. Specifically, under 28 CFR §35.160 General—Communications, states:

> (a)　　(1) a public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions of disabilities are as <u>effective as communication with others</u>.

> (b)　　(2) The type of auxiliary aid or service necessary to ensure <u>effective communication</u> will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the <u>context in which the communication is taking place</u>. In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.

The regulations also specify that in determining what type of aid or service is necessary, the public entity shall give 'primary consideration" to the requests of the individual, and shall "honor" that choice unless it can demonstrate "that another effective means of communication exists."[55]

Likewise, Section 504, Rehabilitation Act of 1973 29 USC Section 794(a) states

> No otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be

---

[55] Title II of ADA 28 CFR 35.130(B)(2)

subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

Law enforcement is included in those entities which are governed by the ADA and the Rehabilitation Act. It is rational to associate equal protection and due process guarantees that are required in the courtroom to apply throughout the criminal justice system. Because Deputy Ramirez recognized that Littlepage was deaf and was protected under the ADA. Deputy Ramirez failed to accommodate for Littlepage's disability and therefore violated his due process rights as a citizen.

## CONCLUSION

The evidence shows Littlepage is deaf and communicates through ASL. Consequently, this case involves an unspoken/visual language and a disability. When viewed in this light, the evidence shows that Littlepage did not understand the statutory warnings and Deputy Ramirez incorrectly assumed Littlepage's non-response was a refusal. Littlepage neither understood nor expressly refused to provide a specimen. Given the unique circumstances of this case, the ALJ erred and this case does not provide for a license suspension.

## PRAYER

For the foregoing reasons, Appellee respectfully requests that the judgment

23

of Williamson County Court Two be affirmed.

Respectfully submitted,

**ATTORNEY FOR APPELLEE**
**CODY LITTLEPAGE**

**Amber Farrelly**
Texas Bar No. 24069671
BAIRD☆FARRELLY CRIMINAL DEFENSE
2312 Western Trails Blvd Ste. 102-A
Austin, TX 78745
Tel. 512-804-5911
Fax.  512-804-5919
adfelaw@gmail.com

By: _____
    Amber D. Farrelly

## CERTIFICATE OF COMPLIANCE

I certify that the computer program used to prepare this document reported that there are 4,331 words in the pertinent parts of the document, per TRAP 9.4(i)(2).

By: _____
    Amber D. Farrelly

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2015, a true and correct copy of the foregoing Appellant's Brief was served on the following counsel of record by the means indicated:

*__Via e-file__*
Kevin M. Givens
Supervising Attorney,
ALR Appellate Section
SBN 00796633
P.O. Box 15327
Austin, Texas 78761-5327
Tel: (512) 424-5193
Fax: (512) 424-5221
Kevin.Givens@dps.texas.gov

By: _____
       Amber D. Farrelly

**No. 03-14-00194-CV**

TEXAS DEPARTMENT OF PUBLIC SAFETY,

Appellant,

V.

CODY LITTLEPAGE,

Appellee

---

APPELLEE'S APPENDIX

---

LIST OF DOCUMENTS

**Tab A**.......................................................Texas Constitution art. I, §10 and 19

26

# TAB

# "A"

Texas Constitution, Article I, Section 10:

In all criminal prosecutions the accused shall have a speedy public trial by an impartial jury. He shall have the right to demand the nature and cause of the accusation against him, and to have a copy thereof. He shall not be compelled to give evidence against himself, and shall have the right of being heard by himself or counsel, or both, shall be confronted by the witnesses against him and shall have compulsory process for obtaining witnesses in his favor, except that when the witness resides out of the State and the offense charged is a violation of any of the anti-trust laws of this State, the defendant and the State shall have the right to produce and have the evidence admitted by deposition, under such rules and laws as the Legislature may hereafter provide; and no person shall be held to answer for a criminal offense, unless on an indictment of a grand jury, except in cases in which the punishment is by fine or imprisonment, otherwise than in the penitentiary, in cases of impeachment, and in cases arising in the army or navy, or in the militia, when in actual service in time of war or public danger.


Texas Constitution, Article I, Section 19:


No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.